*Eastland Food Corporation, et al. v. Edward Mekhaya*, No. 37, September Term, 2022.
Opinion by Gould, J.

**SUFFICIENCY OF PLEADINGS – STOCKHOLDER OPPRESSION – "REASONABLE EXPECTATION"**

The Supreme Court of Maryland held that a proposed amended complaint stated a cause of action for stockholder oppression because the plaintiff alleged sufficient facts to support the reasonableness of his expectation that, by virtue of his status as a stockholder, he would have had continued employment and managerial involvement in his company and would have continued to receive his proportional share of the distributable profits.

**BREACH OF FIDUCIARY DUTY – STANDING TO BRING ACTION**

The Supreme Court of Maryland held that a proposed amended complaint did not state a cause of action for breach of fiduciary duty. The Court determined that the plaintiff could not bring a direct claim for compensatory damages as opposed to a derivative claim because his alleged injury due to breach of fiduciary duty was not separate and distinct from any injury suffered by the corporation.

**UNJUST ENRICHMENT – STANDING TO BRING ACTION**

The Supreme Court of Maryland held that a proposed amended complaint did not state a cause of action for unjust enrichment. The Court determined that the plaintiff could not bring a direct claim for compensatory damages as opposed to a derivative claim because the alleged excessive compensation and use of company funds for personal purposes came at the corporation's expense, not at his expense.

Circuit Court for Howard County
Case No. C-13-CV-21-000666
Argued: June 2, 2023

IN THE SUPREME COURT OF

MARYLAND*

No. 37

September Term, 2022

_____

EASTLAND FOOD CORPORATION, *et al.*

v.

EDWARD MEKHAYA

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Gould, J.
Fader, C.J., and Booth, J., concur.

_____

Filed: August 31, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

This case requires us to test the legal sufficiency of the three-count complaint filed by a minority stockholder in a family-owned corporation against the majority stockholders and directors. The minority stockholder alleged one count of stockholder oppression seeking equitable relief short of dissolution and two counts seeking compensatory damages for claims of breach of fiduciary duty and unjust enrichment. The Circuit Court for Howard County granted defendants' motion to dismiss for failure to state a claim upon which relief may be granted. In doing so, the court denied plaintiff's request for leave to amend the complaint, a copy of which was appended to plaintiff's motion to alter or amend the judgment, which the court also denied.

The Appellate Court of Maryland[1] reversed the judgment of the circuit court, finding that plaintiff's complaint alleged sufficient facts to state a cause of action for each of the three counts. *Mekhaya v. Eastland Food Corp.*, 256 Md. App. 497 (2022). For the reasons explained below, we affirm the judgment of the Appellate Court as to Count I (stockholder oppression) and reverse as to both Count II (breach of fiduciary duty) and Count III (unjust enrichment).

---

[1] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

## BACKGROUND

### *The Allegations of the Proposed Amended Complaint*[2]

This case involves a Maryland corporation called Eastland Food Corporation ("Eastland"). Eastland imports and distributes food and other products. Eastland was founded in the 1980s by Pricha Mekhayarajjananonth, the father of respondent Edward Mekhaya.[3]

Edward had always wanted to be an engineer and, in furtherance of this goal, obtained a Bachelor of Science degree in Electrical and Computer Engineering and a Master of Science degree in Electrical Engineering. He then began a successful engineering career with Hughes Networking Systems in 1997.

In 1999, Pricha recruited Edward to work for Eastland. Pricha told Edward he would become an employee of Eastland, eventually become an owner, and, once an owner, be compensated as an owner. Pricha explained that Eastland distributed profits as annual bonuses instead of dividends. Based on Edward's conversations with his father, recognition of the importance of family, expectations of continued employment and participation in Eastland's management, and Eastland's compensation structure, Edward

---

[2] Because this case comes to us in the context of the granting of a motion to dismiss for failure to state a claim, the summary that follows is drawn from plaintiff's allegations, which obviously are slanted from plaintiff's perspective. Our recitation of the facts in this fashion should not be construed as reflecting any assessment of the merits of the allegations. Moreover, for the reasons explained below in the Standard of Review, we are analyzing this matter based on the allegations in plaintiff's proposed amended complaint.

[3] For clarity purposes only, because all but one of the parties are immediate family members, we will use first names throughout this opinion. In doing so, we intend no disrespect.

resigned from Hughes Networking Systems in 2000 to join Eastland. Edward's parents, Pricha and Vipa Mekhaya, knew that he was forgoing his successful engineering career to join Eastland.

In 2002, Edward was promoted to Vice-President of Operations and was elected to Eastland's board of directors. From 1996 through the end of 2008, Pricha and Vipa each owned 50 percent of the issued and outstanding stock in Eastland. In 2008, as part of Edward's parents' estate planning, Eastland amended its articles of incorporation to increase the number of authorized shares. Eastland then issued sufficient shares to Pricha, Vipa, Edward's brother Oscar Mekhaya, and Edward to establish the following allocation of the issued and outstanding stock: Pricha – 35 percent; Vipa – 35 percent; Oscar – 15 percent; and Edward – 15 percent.

Eventually, in November 2015, Pricha ceased being a shareholder of Eastland and agreed to distribute his shares. This distribution yielded the current allocation of Eastland's stock, with Vipa owning 35 percent, Edward owning 28 percent, Oscar owning 28 percent, and trusts for the benefit of Oscar's three children owning a collective 9 percent.

Edward made many contributions to the company over the years. He led efforts to establish and improve business procedures, and selected and implemented technology to support these improvements. He also introduced warehouse management software and tablet-based order taking, led the design and construction of all but one of Eastland's warehouses, managed Eastland's move to its current Maryland offices, led research into better financial and purchasing methods, and researched and worked on Eastland's first employee handbook.

3

From 2000 to 2008, Edward's annual compensation increased dramatically, from $53,564 in 2000 to $457,376 in 2008. Between 2008 and 2018, Edward's annual compensation ranged from $400,000 to $600,000. This compensation included the bonus payments—which fluctuated year to year based on Eastland's profitability—that Edward received between 2010 and 2018 in lieu of dividends.[4] Edward expected to continue sharing in Eastland's profits, maintain his employment, and participate in management for the duration of Eastland's existence.

In August 2017, Pricha, who until then had led and managed Eastland as its President and as a member of the board of directors, was removed from both positions because, among other reasons, he had moved to Thailand and was not expected to return to resume his duties. Prior to his departure, Pricha had always unilaterally determined the amount of the profit bonuses paid to Eastland's owners.

The following month, over Edward's objection, Oscar was elected President of Eastland.[5] In August 2018, as a director of Eastland, Edward signed a consent form approving a credit line increase for Eastland. Edward did so under protest over various concerns he had raised with the apparent accumulation of excess inventory at a time when revenues increased only "modestly."

---

[4] Edward included this information in tables that listed the annual compensation he received every year from 2000 to 2018, including the amounts attributable to Pricha's unilaterally-determined profit bonuses from 2010 to 2018.

[5] The amended complaint uses the passive voice "was elected" but does not say who did the electing. We assume that Oscar was elected by the board of directors, consistent with its statutory duties. *See* Md. Code Ann. Corps. & Ass'ns § 2-413 (1975, 2014 Repl. Vol.).

On October 2, 2018, Edward received from Eastland's counsel the agenda for the stockholders' meeting scheduled for October 12. The agenda included "introduction of a dividend study (advantages to moving to shareholders getting dividends with respect to their ownership in lieu of salaries being paid as if they were dividends)." On October 10, Edward requested three years of payroll data from Eastland's human resources manager. At Oscar's instruction, the manager withheld the requested information from Edward.

Edward came to the October 12 stockholders' meeting accompanied by his personal counsel. Motions to exclude his counsel from the meeting were made and then withdrawn. Various matters were discussed, and the board of directors was elected. This time, "without cause or reason," Edward was not re-elected. Since that meeting, the board of directors has consisted of three members: Oscar, Vipa, and an individual named Tisnai Thaitam. Edward's efforts to re-join the board were rejected by the stockholders at subsequent annual stockholder meetings.

Three days after the October 12 stockholders' meeting, Edward was terminated from his position with Eastland. After he was terminated, despite the company's continued profitability, Eastland has refused to pay Edward any share of the profits whatsoever, regardless of its form. Instead, Vipa, who has done no substantial work for Eastland, and Oscar, whose poor management skills have caused high employee turnover and low morale, have been taking excessive compensation and diverting corporate funds for personal use.

### *The Counts*

Edward's proposed amended complaint alleges the same three causes of action asserted in his initial complaint: oppression of a minority shareholder against Oscar, Vipa, Tisnai, and Eastland (Count I); breach of fiduciary duty against Oscar, Vipa, and Tisnai (Count II); and unjust enrichment against Oscar and Vipa (Count III). Each count rests on common facts, namely, that since Edward was terminated from Eastland: (1) Oscar and Vipa have received distributions of Eastland's profits through excessive compensation; (2) Oscar and Vipa have diverted corporate funds for personal use; and (3) Eastland refuses to pay any share of the profits to Edward through compensation or dividends.

In Count I, Edward alleges that Vipa and Oscar, as both majority stockholders and directors, along with Tisnai as director, engaged in conduct that has defeated his reasonable expectations of continued employment, managerial input, and sharing of profits as a stockholder. In doing so, Edward invokes the involuntary dissolution statute, Md. Code Ann. Corps. & Ass'ns ("CA") § 3-413 (1975, 2014 Repl. Vol.), but seeks various forms of equitable relief short of dissolution, namely: (i) "the appointment of a receiver . . . to continue the operation of Eastland for the benefit of all stockholders"; (ii) "the retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver"; (iii) an injunction prohibiting continuing acts of "oppressive" conduct as alleged in the amended complaint; (iv) "an injunction directing [petitioners] to declare and pay dividends for the calendar years 2018, 2019, and 2020"; (v) an injunction directing petitioners to pay Eastland's profits to Edward as a bonus in lieu of a declared dividend; (vi) "a constructive trust against the profits of [] Eastland for distribution to

6

[Edward] in the same form as the profits of [] Eastland are distributed to other stockholders . . . ."; (vii) "an accounting to [Edward] of all income, expenses, profits, liabilities, assets, and transactions of [] Eastland"; and (viii) other equitable relief as appropriate under CA § 3-413.  He also seeks compensatory damages of at least $75,000.

In Count II, Edward alleges that Oscar, Vipa, and Tisnai, in their capacities as Eastland's directors, breached their fiduciary duties to Eastland and its stockholders, including the duties

> to act (1) in good faith; (2) in a manner each reasonably believes to be in the best interests of Eastland; and (3) with the care that an ordinarily prudent person in a like position would use under similar circumstances, so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.[6]

In addition, Edward alleges that, as majority shareholders of Eastland, Oscar and Vipa breached their fiduciary duty not to exercise their control of the company to his disadvantage.  Edward seeks compensatory damages of at least $75,000 for this count.

In Count III, Edward alleged that Oscar and Vipa were unjustly enriched at his expense by their excessive compensation and diversion of corporate funds for personal use. He seeks compensatory damages of at least $75,000.

### *Defendants' Motion to Dismiss*

Petitioners Eastland, Oscar, Vipa, and Tisnai jointly moved to dismiss Edward's complaint pursuant to Maryland Rule 2-322.  Petitioners' motion and Edward's opposition debated whether Edward alleged sufficient facts to: (1) sustain a stockholder oppression

---

[6] Edward does not cite CA § 2-405.1 as the source of such duties, but recites almost verbatim the language from that statute.

claim, given the at-will nature of his employment with Eastland; (2) overcome the business judgment rule under CA § 2-405.1; and (3) sustain a direct cause of action against Oscar, Vipa, and Tisnai.

The court heard oral argument on defendants' motion, at the end of which Edward's counsel sought leave to amend the complaint to cure any defects in it. The court asked counsel to proffer the additional facts that Edward would allege. Edward's counsel explained, among other things, that Edward would allege additional facts relating to the circumstances under which Edward joined Eastland and Eastland's practice of distributing profits through bonus compensation.

The circuit court denied Edward's counsel's request and granted the motion to dismiss in its entirety, with prejudice. Regarding Edward's claim of oppression of a minority shareholder, the trial judge explained:

> I think [Edward's] pleadings . . . fail to show or plead how [his] expectations were substantially defeated. The concept of his salary as dividends — or dividends as salary, excuse me, is a new concept today. There is no — there seems to be no confirmed basis that it was ever reviewed as [] dividends or that the salary was viewed as dividends in this matter. And I think that when you look at [the case law], it is necessary to look at . . . the overall relationship, [and] there's no expectations set up that there would be dividends and that these would be continued to be paid. There was an employee of the company who had been terminated and so on. And so, I think in the general nature of the pleadings, they're not sufficient at this time.

With respect to Edward's claims of breach of fiduciary duties and unjust enrichment, the court stated:

> In terms of Counts Two and Three, this was not brought as a derivative suit . . . . I think the – again, [Edward's] assertion that dividends would have been paid is a misnomer here. That he was receiving a salary before. He was fired as an at-will employee and so was no longer receiving a salary.

8

And in the pleading, itself, it indicates that – really makes assertions that part of that harm was to the corporation, and I've heard nothing today that the harm was distinct from that of the corporation . . . . And again, there is a presumption, based on [the business judgment rule], that the Defendants in their capacities acted . . . in the best interest of the company and that they acted accordingly. And based on what is in the pleadings, they are not sufficient. And I have heard nothing today, even with what [Edward] through Counsel had added that would or could be had with amendment.

Edward timely moved to alter or amend the judgment. He attached his proposed amended complaint as an exhibit. In a brief order, the circuit court denied Edward's motion "[a]fter careful consideration of the motion, opposition, and reply[.]"

Edward timely appealed to the Appellate Court of Maryland.

### *Opinion of the Appellate Court of Maryland*

The Appellate Court of Maryland reversed the judgment of the circuit court and held that Edward alleged sufficient facts to support all three causes of action in his initial complaint. *Mekhaya v. Eastland Food Corp.*, 256 Md. App. 497, 526-27, 530 (2022). The Court found that he stated a claim for stockholder oppression because he "allege[d] that Eastland's majority shareholders, namely Oscar and Vipa, engaged in conduct that defeated substantially his objectively reasonable expectations as a minority shareholder," and "the relief requested . . . c[a]me within the circuit court's equitable powers." *Id.* at 518. The Court focused its attention on Edward's claim that he reasonably expected to continue sharing in company profits by way of "*de facto* dividends" paid to employees through compensation and bonuses, and that cessation of these payments due to his termination substantially defeated this expectation. *Id.*

9

The Court construed Maryland statutes on corporate dividends to neither expressly recognize nor foreclose the possibility of "*de facto*" dividends. *Id.* at 519. According to the Court, the concept of a "constructive," "disguised," or "*de facto*" dividend paid as part of a shareholder's salary is well-established in other jurisdictions. *Id.* Thus, the Court held that Edward's complaint "alleged facts sufficient to establish that his expectations as a shareholder were reasonable . . . and that Appellees defeated substantially one or more of those expectations." *Id.* at 519-26.

The Court also held that the circuit court erred in dismissing Edward's breach of fiduciary duty count, crediting Edward's allegations that the board owed him a fiduciary duty to continue paying him "*de facto*" dividends and that deprivation of those dividends constituted a breach resulting in harm to Edward. *Id.* at 529-30. The Court explained that because Edward alleged that he, rather than the corporation, suffered the harm alleged, he properly asserted a direct rather than a derivative claim. *Id.* However, the Court cautioned that Edward's breach of fiduciary duty claim would need to be brought derivatively if he could not prove his entitlement to the "*de facto*" dividends received by Oscar and Vipa. *Id.* at 530.

Finally, the Appellate Court held that the circuit court erred in dismissing Edward's unjust enrichment count. *Id.* The Court concluded that Edward alleged individual harm from being deprived of a "*de facto*" dividend paid to and inequitably retained by Oscar and Vipa, and that he therefore alleged a cognizable direct claim. *Id.*

10

Petitioners petitioned for writ of certiorari, which we granted. *Eastland Food Corp. v. Mekhaya*, 483 Md. 264 (2023). They present one question for our review, which we have rephrased as follows:[7]

> May a minority shareholder of a closely held Maryland corporation bring direct claims against the corporation's board of directors for minority shareholder oppression, breach of fiduciary duty, and unjust enrichment on the ground that the directors distributed corporate profits to the exclusion of the minority shareholder?

**STANDARD OF REVIEW**

Pursuant to Maryland Rule 2-322(b)(2), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. The court must read the complaint in the light most favorable to the plaintiff, and accept as true the well-pleaded facts and the reasonable inferences drawn from such facts. *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010). The court may dismiss the complaint only if the allegations and permissible inferences drawn therefrom fail to state a cause of action. *Id.* The court's ruling is a question of law that appellate courts review without deference. *Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 551 (2021).

If the court orders dismissal pursuant to Maryland Rule 2-322(b)(2), "an amended complaint may be filed only if the court expressly grants leave to amend." Md. Rule 2-

---

[7] The question as presented by petitioners was:

> May a minority shareholder bring a direct action against a closely-held Maryland corporation whose Board of Directors had never declared a dividend on the grounds that a portion of the employment compensation previously paid to him was a "*de facto* dividend" he expected to continue, even though this Court has never recognized the doctrine of "*de facto* dividend" and Maryland law provides dividends cannot accrue or be payable unless they are declared by the corporation's Board of Directors?

11

322(c). Maryland Rule 2-341 governs amendment of pleadings. When leave of court is required, Rule 2-341(c) provides that "[a]mendments shall be freely allowed when justice so permits." Denial of leave to amend is appropriate if the amendment would result in prejudice to the other party, undue delay, or where amendment would be futile because the claim is irreparably flawed. *RRC Ne.,* 413 Md. at 673-74. This flexibility ensures that cases succeed or fail on their merits, not on the niceties of pleading. *Crowe v. Houseworth*, 272 Md. 481, 485 (1974).

Here, the circuit court dismissed the initial complaint with prejudice and denied Edward's request for leave to amend, which he made at the hearing on the motion to dismiss and again in his motion to alter or amend the judgment. We assume that the circuit court, after careful consideration, concluded that the proposed amended complaint did not cure the complaint's deficiencies and therefore determined that it would have been futile for plaintiff to file it.

The Appellate Court reversed the circuit court based on its analysis of the complaint alone, without considering the proposed amended complaint. We take a different approach and analyze the legal sufficiency of Edward's proposed amended complaint, summarized above. That's because, if the proposed amended complaint would have stated a cause of action, Edward should have been granted leave to file it. As explained below, we conclude that the proposed amended complaint alleged sufficient facts to support one of the three causes of action Edward asserted.

## DISCUSSION

### *Basic Principles of Corporate Law*

"A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving a maximum profit with a minimum exposure to liability." *Dixon v. Process Corp.*, 38 Md. App. 644, 645 (1978). Corporations are legal entities separate and apart from their owners. *United Elec. Supply Co. v. Greencastle Gardens Section III Ltd. P'ship*, 36 Md. App. 70, 79 (1977). The statutory provisions governing Maryland corporations are contained in the Corporations and Associations Article. Titles 1 through 3 of that article are collectively known as the Maryland General Corporation Law (the "MGCL"). The MGCL covers, among other things, the formation of corporations, rights and duties of stockholders, officers, and directors, and extraordinary actions such as dissolving and winding up the affairs of corporations. The internal affairs of a corporation are governed by the relevant provisions of the Corporations Article, along with the corporation's articles of incorporation, bylaws, and any stockholder agreements.[8]

---

[8] These instruments may alter the default rules governing the internal affairs of corporations set forth in the MGCL. *See, e.g.*, CA §§ 2-405.2 ("The charter of the corporation may include any provision expanding or limiting the liability of its directors and officers . . . ."); 2-406 ("Unless the charter of the corporation provides otherwise . . . ."); 2-407 ("[U]nless the charter or the bylaws of the corporation provide otherwise . . . ."); 2-408 ("Unless the bylaws of the corporation provide otherwise . . . ."), 2-409 ("Unless the bylaws of the corporation provide otherwise . . . ."); 2-413 ("Unless the bylaws provide otherwise, the board of directors shall elect the officers."); 2-503 ("Unless the charter provides otherwise, meetings of stockholders shall be held as . . . ."); 2-504 ("Unless the charter or bylaws provide otherwise . . . .").

A corporation is owned, but not managed, by its stockholders. *Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 695 (2007). The responsibility for managerial oversight of a corporation lies with its board of directors pursuant to CA § 2-401, which provides:

> (a) All business and affairs of a corporation, whether or not in the ordinary course, shall be managed by or under the direction of a board of directors.
> (b) All powers of the corporation may be exercised by or under authority of the board of directors except as conferred on or reserved to the stockholders by law or by the charter or bylaws of the corporation.

The board of directors exercises its authority either directly or through the officers it appoints. CA § 2-401; *Werbowsky v. Collomb*, 362 Md. 581, 598-99 (2001). Directors are elected by the stockholders. CA § 2-404. Among other duties, directors are responsible for establishing the compensation structure for executives. *Mona*, 176 Md. App. at 695.

The standards for director conduct are set forth in CA § 2-405.1. Enacted by the General Assembly in 1976, this statute was designed to replace the prior and sometimes inconsistent or confusing articulations of such standards in Maryland caselaw.[9] Under the current version of CA § 2-405.1(c):

---

Given the context in which this case comes to us—a dismissal of the complaint for failure to state a claim—none of these instruments are before the Court. The discussion that follows is limited, therefore, to the relevant provisions of the MGCL.

[9] *See, e.g.*, *Booth v. Robinson*, 55 Md. 419, 436-37 (1881) (explaining that the confidence reposed in directors "require[s] a strict and faithful discharge of duty"); *Fisher v. Parr*, 92 Md. 245, 265 (1901) (establishing that directors are "required to perform their duties with skill and reasonable care"); *Carrington v. Basshor*, 118 Md. 419, 442-43 (1912) (requiring proof of "gross or culpable negligence" to render a director personally liable); *Matthews v. Headley Chocolate Co.*, 130 Md. 523, 528 (1917) (explaining that a corporation can proceed in equity for the "illegal, fraudulent, ultra vires, or grossly negligent acts of its directors or officers"); *Pritchard v. Myers*, 174 Md. 66, 77 (1938) (noting that a director may be personally liable if he or she "neglect[s] to exercise that

[a] director of a corporation shall act: (1) [i]n good faith; (2) [i]n a manner the director reasonably believes to be in the best interests of the corporation; and (3) [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances.

In *Shenker v. Laureate Education, Inc.*, this Court held that CA § 2-405.1 was the exclusive source of the directors' standard of care *only* when acting in their *managerial* capacity. 411 Md. 317, 339 (2009). According to *Shenker*, when directors step out of their managerial role to negotiate the price stockholders will receive for their shares in a cash-out merger, they act as fiduciaries to the stockholders and thereby assume the fiduciary duties of maximizing the price and disclosing all material information concerning the transaction. *Id.* at 336-39.[10]

The General Assembly took note of *Shenker* and amended CA § 2-405.1 in 2016 to clarify that the statute applies to all of the directors' conduct.[11]

---

degree of diligence and prudence in the management of the corporation . . . which ordinarily skillful and prudent men generally exercise in that situation"); *Williams v. Salisbury Ice Co.*, 176 Md. 13, 23 (1939) (requiring the plaintiff to produce proof of fraudulent conduct on behalf of the director to maintain an action against the corporation); *Warren v. Fitzgerald*, 189 Md. 476, 491 (1948) (returning to the fraud standard articulated in *Matthews v. Headley Chocolate Co.*); *Parish v. Md. & Va. Milk Producers Ass'n*, 250 Md. 24, 74 (1968) (explaining that corporate directors may be personally liable for loss of corporate funds due to "gross or culpable negligence").

[10] Noting that CA § 2-405.1(g) stated that "[n]othing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation," the Court held that this bar against direct actions applied only to managerial activities subject to section 2-405.1's standard of care, but not to claims based on duties imposed by directors acting in a non-managerial role. *Shenker*, 411 Md. at 348-49.

[11] Section 2-405.1 provides that:

(a) In this section, "act" includes, as the context requires:

    (1) An act, omission, failure to act, or determination made not to act; or

    (2) To act, omit to act, fail to act, or make a determination not to act.

(b) This section applies to acts of an individual who:

    (1) Is or was a director of a corporation; and

    (2) Is acting or was acting in the individual's official capacity as a director of a corporation.

(c) A director of a corporation shall act:

    (1) In good faith;

    (2) In a manner the director reasonably believes to be in the best interests of the corporation; and

    (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.

(d)(1) A director is entitled to rely on any information, opinion, report, or statement, including any financial statement or other financial data, prepared or presented by:

    (i) An officer or employee of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

    (ii) A lawyer, certified public accountant, or other person, as to a matter which the director reasonably believes to be within the person's professional or expert competence; or

    (iii) A committee of the board on which the director does not serve, as to a matter within its designated authority, if the director reasonably believes the committee to merit confidence.

    (2) A director is not acting in good faith if the director has any knowledge concerning the matter in question which would cause the reliance to be unwarranted.

(e) A director who acts in accordance with the standard of conduct provided in this section shall have the immunity from liability described under § 5-417 of the Courts and Judicial Proceedings Article.

\* \* \*

(g) An act of a director of a corporation is presumed to be in accordance with subsection (c) of this section.

(h) An act of a director of a corporation relating to or affecting an acquisition or a potential acquisition of control of the corporation or any other transaction or potential transaction may not be subject to a higher duty or greater scrutiny than is applied to any other act of a director.

16

Three observations about CA § 2-405.1 in its current form are relevant here. *First*, section 2-405.1 applies only to a current or former director acting in their "official capacity as a director of the corporation." CA § 2-405.1(b). This section does not, therefore, apply to stockholders or officers acting in their capacity as such.

*Second*, the General Assembly eliminated the distinction drawn by the Court in *Shenker* between managerial and non-managerial director duties by clarifying that section 2-405.1 is the "sole source" of directors' duties to the corporation and its stockholders "whether or not a decision has been made to enter into an acquisition or a potential acquisition of control of the corporation or enter into any other transaction involving the corporation." CA § 2-405.1(i).

*Third*, the General Assembly deleted subsection (g) from the prior version of the statute, which stated that "[n]othing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation." The elimination of this subsection removed the impediment to a direct action against a director by a stockholder who suffers an injury distinct from that of the corporation.

---

(i) This section:
> (1) Is the sole source of duties of a director to the corporation or the stockholders of the corporation, whether or not a decision has been made to enter into an acquisition or a potential acquisition of control of the corporation or enter into any other transaction involving the corporation; and
> (2) Applies to any act of a director, including an act as a member of a committee of the board of directors.

17

As owners, stockholders participate in the economic success of the corporation. One way is through distributions.[12] Relevant here, a distribution is "[a] direct or indirect transfer of money . . . in respect of any of its shares[,]" CA § 2-301(a)(1)(i), and may be made in the form of a "declaration or payment of a dividend[,]" CA § 2-301(b)(1). Dividends must be "authorized by [a corporation's] board of directors . . . subject to any restriction in its charter and the limitations in [CA § 2-311]." CA § 2-309(b). For example, a corporation may not make a distribution if doing so would render the corporation unable to pay its bills as they come "due in the usual course of business." CA § 2-311(a)(1)(i).

When the board properly authorizes a dividend, unless a subordination agreement requires otherwise, the stockholder becomes a creditor on the same footing as the corporation's other creditors. CA § 2-311(d); *see also Heyn v. Fid. Tr. Co.*, 174 Md. 639, 646-49 (1938). Directors may, under certain circumstances, be held personally liable *to the corporation* for improperly authorizing dividends in violation of the standard of care set forth in CA § 2-405.1. CA § 2-312.

Against the foregoing backdrop, we turn to the causes of action asserted by Edward in his proposed amended complaint.

### Count I – Oppression of Minority Stockholder

Edward alleged that petitioners engaged in "illegal, fraudulent and oppressive" conduct, entitling him to various forms of equitable relief short of Eastland's dissolution. In doing so, he invoked CA § 3-413, which establishes the statutory basis for involuntary

---

[12] Another way is through an increase in the value of the stock.

dissolution. Section 3-413(b)(2) provides that "any stockholder entitled to vote in the election of directors of a corporation may petition a court of equity to dissolve the corporation on grounds that . . . [t]he acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent."

Though the statute does not define oppression, this Court has described it as "adverse treatment of minority shareholders in a closely held corporation by those who wield power within the company." *Bontempo v. Lare*, 444 Md. 344, 365 (2015). The term "closely held corporation" is used to describe a corporation with certain defining attributes, namely, "(1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction, and operations of the corporation." *Edenbaum v. Schwarcz-Osztreicherne*, 165 Md. App. 233, 257 (2005) (citation omitted). Thus, stockholders of a closely held corporation often consider themselves co-owners with an active role in its management and an expectation of continued employment. *Id.*

Minority stockholders can be vulnerable to "freeze out" tactics of the majority stockholders. As the court explained in *Edenbaum*:

> [T]he very nature of a closely held corporation makes it possible for a majority shareholder to "freeze out" a minority shareholder, that is, "'deprive a minority shareholder of her interest in the business or a fair return on her investment.'" "The limited market for stock in a [closely held] corporation and the natural reluctance of potential investors to purchase a noncontrolling interest in a [closely held] corporation that has been marked by dissension can result in a minority shareholder's interest being held 'hostage' by the controlling interest, and can lead to situations where the majority 'freeze out' minority shareholders by the use of oppressive tactics."

19

165 Md. App. at 257-58 (internal citations omitted). The Court also noted that the "reasonable expectations view" of oppressive conduct:

> [r]ecogniz[es] that a minority shareholder who reasonably expects that ownership in the corporation would entitle him to a job, a share of the corporate earnings, and a place in corporate management would be 'oppressed' in a very real sense when the majority seeks to defeat those expectations and there exists no effective means of salvaging the investment.

*Id.* at 258 (citation omitted).

The Court in *Edenbaum* also observed that the sole remedy expressly provided under CA § 3-413 is involuntary dissolution. Due to the drastic nature of a corporate dissolution, however, the Court held that before ordering a dissolution, courts should first consider other equitable remedies to rectify the oppressive conduct. 165 Md. App. at 260-61. The Court identified a non-exhaustive list of such potential remedies.[13] *Id.*

---

[13] The list of equitable remedies short of dissolution include:

(a) The entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date;

(b) The appointment of a receiver, not for purposes of dissolution, but to continue the operation of the corporation for the benefit of all the stockholders, both majority and minority, until differences are resolved or "oppressive" conduct ceases;

(c) The appointment of a "special fiscal agent" to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose;

(d) The retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or a "special fiscal agent";

(e) The ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated;

20

In *Bontempo v. Lare*, this Court adopted the reasonable expectations doctrine articulated in *Edenbaum* for assessing stockholder oppression claims. 444 Md. at 348. Under this doctrine, the dashed subjective hopes and desires of the stockholder will not sustain a claim for oppression. *Id.* at 366. Conduct is oppressive if it defeats objectively reasonable expectations that were "central" to the stockholder's decision to join the corporation. *Id.* This Court also endorsed *Edenbaum*'s requirement that before considering dissolution, courts should first consider less drastic equitable remedies. *Id*. at 368-70.

We cautioned, however, that "[a] court acting under CA § 3-413 to fashion a remedy less drastic than dissolution is not required to match its remedy to an expectation of the

(f) The issuance of an injunction to prohibit continuing acts of "oppressive" conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive;

(g) The ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital;

(h) The ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined according to a specified formula or at a price determined by the court to be a fair and reasonable price;

(i) The ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court;

(j) An award of damages to minority stockholders as compensation for any injury suffered by them as the result of "oppressive" conduct by the majority in control of the corporation.

*Edenbaum*, 165 Md. App. at 260-61.

Here, Edward's proposed amended complaint did not seek dissolution of Eastland, but rather various equitable remedies, including those drawn directly from the above list and adopted by this Court in *Bontempo* (specifically, remedies "b", "d", "f", and "e").

21

minority shareholder." *Id*. at 369. In *Bontempo*, the trial court found that the minority stockholder, though an at-will employee, had a reasonable expectation of continued employment. *Id.* at 357-58. But, although the trial court granted *other* equitable remedies for his defeated expectations, it declined to order the company to reinstate him or pay employment-related damages. *Id.* We held that because of his at-will status, his defeated expectation of continued employment did not require the trial court to order employment-related relief. *Id*. at 373-74.

We explained that the reasonable expectations inquiry is a means for "detecting oppression, but it does not dictate the relief that an equity court is to grant." *Id.* at 371. Thus, we stated: "To hold that the court abused its discretion and that [the minority stockholder] was entitled to employment-related relief—whether reinstatement or [monetary damages]—would be to convert a discretionary equitable remedy into a substantive legal right." *Id*. at 374. In other words, a minority stockholder's at-will status precludes him from asserting a legal entitlement to employment relief, but does not preclude him from seeking other forms of equitable relief. In fashioning relief, courts should consider a variety of factors and interests beyond the defeated expectations of the oppressed stockholder, including the interests of "other shareholders, its management, employees, and customers."[14] *Id*. at 370.

---

[14] Even if a minority stockholder of a closely held corporation alleges a reasonable expectation of continued employment at the time he became a stockholder and is subsequently terminated, it does not necessarily follow that the termination of his at-will employment would *alone* support an oppression claim and entitlement to equitable relief. Reasonable expectations notwithstanding, a minority stockholder who is employed at will

22

We turn now to petitioners' arguments on appeal. Citing the absence of allegations that Edward had an agreement that spelled out his rights as an employee or stockholder, petitioners argue that Edward alleged "nothing more than subjective hopes, desires, and disappointment." They argue that, in the absence of an agreement stating otherwise, Edward was an at-will employee and therefore not entitled to equitable relief under *Bontempo* and *Edenbaum*.

Petitioners also argue that Edward "could not have had reasonable expectations in committing his capital to Eastland because he never alleged that he made such a commitment." They argue he never invested time or money in Eastland, but rather, "his family gave him shares."

Crediting Edward's allegations and the reasonable inferences drawn therefrom; we conclude that Edward's proposed amended complaint states a cause of action for stockholder oppression. To recap: Eastland is a family-owned and operated business founded by Edward's father. Only family members have been involved in Eastland's

---

might be subsequently terminated by the board of directors for legitimate business reasons that would not *alone* support an oppression claim. Such claims must be determined on the specific facts and circumstances of the case, which is why *Edenbaum* and *Bontempo* emphasize the flexibility and discretion courts of equity have in determining what, if any, remedies are appropriate. Here, we conclude only that the *totality* of the facts and circumstances alleged by Edward in his proposed amended complaint suffice to state a cause of action.

Notably, here, although Edward alleges a reasonable expectation of continued employment, he does not request the court to restore him to his former position or award him back-pay. The equitable relief he seeks short of dissolution appears to be directed at protecting his expectation of sharing in Eastland's profits.

management and operations, and until December 31, 2008, Edward's parents were the only stockholders.

Edward first worked for the company as a child. As an adult, he embarked on an engineering career but was soon recruited to Eastland by his father, with promises of employment, managerial responsibilities, and ownership. He joined the company, and was soon promoted to Vice-President and elected to the board of directors. Then, on December 31, 2008, as promised by his father, he became a stockholder of Eastland at the same time as his brother Oscar. He first received stock not from his family, as petitioners argue, but directly from Eastland following an amendment to its articles of incorporation that authorized the issuance of additional stock. That's also how Oscar first received stock. And, Edward received profit distributions the same way as the other stockholders did—through bonuses determined by Pricha.

Edward has alleged sufficient facts to support the reasonableness of his expectation that, by virtue of his status as a stockholder, he would have continued employment and managerial involvement in Eastland. It's reasonable for the founders of a family-owned business to structure their business and estate plan to pass along the business—both management and ownership—to the next generation in the family. It's also reasonable for a son who leaves a profession at his father's request to expect continued employment by the family-owned business, particularly when the period of employment predating the issuance of shares could be seen as the father's test of his son's commitment and dedication to the company. Put simply, based on the well-pleaded facts of the proposed amended complaint, Edward alleged a reasonable expectation—not legal entitlement, but

24

expectation—that continued employment and managerial input as a director would go along with stock ownership.

Edward likewise pleaded sufficient facts to support a reasonable expectation that he would receive his share of the distributable profits in accordance with his ownership percentage. As a general matter, one of the reasons for owning stock in the first place is to enjoy the fruits of its economic success. James J. Hanks, Jr., *Maryland Corporation Law* § 7.1, at 223 (1994, 2019 Supp.). That alone adds a measure of reasonableness to Edward's expectation.

Moreover, before Edward joined the company, his father explained to him the company's practice of paying out the company's profits in the form of bonuses rather than dividends. His father explained that this practice would continue after Edward became an owner, and it did. Edward detailed his total compensation from 2000 until his termination in 2018, including very specific amounts—down to the dollar—of compensation attributable to profit bonuses once he became a stockholder.

Until he left the company in August 2017, Pricha ran Eastland as its President and unilaterally determined the amount of the profit bonuses. After Pricha severed ties in 2017, the stockholders considered at the 2018 annual stockholders' meeting whether to abandon Pricha's practice of distributing profits through bonuses and instead distribute profits through dividends. That this topic made its way onto the agenda at this time makes sense. With Pricha gone, somebody had to decide whether, how, and in what amounts profits should be distributed to Eastland's stockholders. And, under Maryland law, that "somebody" is supposed to be the board of directors, CA § 2-309(b), and the "how" is

25

supposed to be by dividends, CA § 2-301.  Although the stockholders apparently did not move to a dividend model, taken together, these allegations, if proven, support the inference that from the stockholders' perspective, the issue wasn't *whether* distributable profits would be paid, but *how* and *how much*.[15]

According to Edward, however, after he was terminated, Eastland stopped distributing profits through bonuses and refused to distribute profits through dividends. Instead, Vipa and Oscar drew excessive compensation and diverted corporate funds for personal use to reduce the company's profits.  As a result of these actions, Edward was denied all economic benefits attendant to his stock ownership.  These allegations suffice to state a viable cause of action for minority stockholder oppression under the standard articulated in *Edenbaum* and adopted in *Bontempo*.[16]

---

[15] We qualify "profits" with "distributable" intentionally.  A corporation is not required to distribute profits.  That decision is made by the board of directors and, like all board actions, is subject to the standard of care set forth in CA § 2-405.1.  *Renbaum v. Custom Holdings, Inc.*, 386 Md. 28, 54 n.22, 55 (2005).  The board of directors may determine, in the exercise of its business judgment, that some or all of the profits should be reserved for a variety of legitimate business purposes.  *See* CA § 2-304.

[16] A few words about the Appellate Court's use of the concept of "*de facto* dividends."  The Court framed the issue as "whether the *de facto* dividend claimed by [Edward], or the majority shareholders' refusal to expressly declare a dividend, could be an objectively reasonable expectation by him, according to the circumstances set out in the complaint." *Mekhaya*, 256 Md. App. at 519.  The Court stated that although the Maryland statutes "do not recognize expressly a 'de facto' dividend," nor do they "foreclose such a dividend." *Id*.

Although, when considered in context, the Appellate Court's use of the phrase "*de facto* dividend" does not upend Maryland law, as petitioners argue, we believe such use was unnecessary to resolve the issue before the Court and we therefore discourage its use. By suggesting that the MGCL does not "foreclose such a dividend," the Court introduced

Should Edward prove his oppression claim at trial, the court may impose appropriate equitable relief short of dissolution, consistent with the principles expressed by this Court in *Bontempo*.[17] Accordingly, because the proposed amendment to Count I would not have

---

the possibility that Maryland law permits corporations to pay dividends outside of the statutory parameters of the MGCL. Therefore, nothing in this or the Appellate Court's opinion should be interpreted as altering or creating exceptions to the statutory framework governing the authorization and payment of dividends by Maryland corporations.

[17] In adjudicating this claim and, if it comes to that, in fashioning equitable relief, the court should differentiate between actions taken in an individual's official capacity as a director and those taken as a stockholder. As discussed above, actions taken by the board of directors are subject to the provisions of CA § 2-405.1. So, for example, if Tisnai, who is not alleged to be a stockholder, acted in his official capacity as a director, his conduct would be subject to section 2-405.1.

The analysis is more complicated with respect to Vipa and Oscar, who collectively own a majority of Eastland's stock *and* serve as directors. Section 2-405.1 applies to their conduct taken in their official capacity as directors, but not for wielding power enjoyed by virtue of their collective majority in stock ownership. In that regard, under Maryland law, "minority shareholders are entitled to protection against the fraudulent or illegal action of the majority. When a majority stockholder abuses its power, a minority stockholder is entitled to appropriate relief." *Lerner v. Lerner Corp.*, 132 Md. App. 32, 53 (2000) (internal citation omitted). When the majority stockholders are also board members—as is often the case in closely held corporations—conduct in violation of CA § 2-405.1 might also give rise to an oppression claim under CA § 3-413, and vice versa. Nevertheless, we do not rule out the possibility that certain conduct could be insulated from liability under CA § 2-405.1 *and*, at the same time, sustain an oppression claim under CA § 3-413. Because we are only concerned with the legal sufficiency of the proposed amended complaint, we will not speculate whether this is such a case.

Here, Edward alleges in conclusory fashion that Vipa's and Oscar's actions were taken as directors *and* as majority stockholders. Certain actions of which Edward complains are, in the absence of provisions of the articles of incorporation, bylaws, or stockholder agreements to the contrary, vested by the MGCL in the board of directors. When a stockholder complains of an action vested in the board of directors, unless the stockholder can allege facts which, if proven true, show that such actions were not taken by board of directors, then the plaintiff stockholder must allege facts that overcome the presumption afforded directors under CA § 2-405.1. Edward's proposed complaint does

27

been futile, the circuit court erred by dismissing Count I with prejudice and denying Edward leave to amend that count pursuant to his proposed amended complaint.

### *Count II – Breach of Fiduciary Duty*

Edward alleges that, as directors of Eastland, Oscar, Vipa, and Tisnai owe fiduciary duties to Eastland and its stockholders. He also alleges that Oscar and Vipa, as majority stockholders, owe him fiduciary duties as well. The factual basis for Edward's breach of fiduciary duty claim is essentially the same as his oppression claim, specifically, Oscar's and Vipa's excessive compensation, diversion of corporate funds for personal use, and taking of profits without paying Edward his rightful share.

Petitioners argue that Edward has improperly sued in his individual capacity for injuries allegedly suffered by the corporation. To pursue this claim, they argue, Edward was required to bring a derivative claim on behalf of Eastland, not a direct claim against Vipa, Oscar, and Tisnai. Petitioners also argue that Edward hasn't pleaded sufficient facts to overcome the presumption under CA § 2-405.1 that the directors, in deciding whether to authorize dividends, complied with the standard of care.

We will briefly dispense with petitioners' argument that Edward has not alleged facts to overcome section 2-405.1's presumption. A presumption is just that—a

---

not clarify whether the actions he complains of were taken by the board of directors or by Vipa and Oscar without proper authorization from the board. Ordinarily, this lack of specificity could give rise to a motion to dismiss or, perhaps, a motion for more definite statement. However, for the same reasons discussed below in connection with our discussion of Count II, Edward's allegations suffice at the pleading stage to overcome the presumption afforded under CA § 2-405.1, so the lack of specificity does not render his pleading defective. Whether he can adduce the evidence in discovery to prove those allegations and overcome that presumption is not before us.

28

presumption. If Edward had alleged only that the company was profitable and the board refused to authorize a dividend, such a bare allegation would not overcome the presumption. But he has alleged more than that. In a nutshell, Edward has alleged that the directors have permitted Oscar and Vipa to loot the company by taking corporate funds for personal use. He also alleges that they have excluded him from sharing in the company's profits while allowing Oscar and Vipa to take profits through excessive compensation. At the pleading stage, these allegations suffice to overcome section 2-405.1's presumption that the directors complied with the standard of care.

We agree with petitioners, however, that Edward has not stated direct claims for breach of fiduciary duties for compensatory damages against Oscar, Vipa, and Tisnai for the alleged excessive payments (compensation or otherwise) made to Vipa and Oscar. Edward argues that he is entitled to pursue a direct claim because section 2-405.1 expressly acknowledges that directors owe duties to stockholders. And he also argues that he has a direct claim under the common law rule that majority stockholders owe fiduciary duties to minority stockholders. *See Lerner v. Lerner Corp.*, 132 Md. App. 32, 53 (2000) ("A majority stockholder in a close corporation owes a fiduciary obligation not to exercise that control to the disadvantage of minority stockholders."). Although both statements correctly articulate the law—indeed Edward's proposed amended complaint faithfully parrots the standard of care under section 2-405.1 and *Lerner v. Lerner's* articulation of the majority stockholders' duty to minority stockholders—the defects in his pleading lie elsewhere.

*First*, the cases addressing the fiduciary duties owed by majority stockholders to minority stockholders do not hold that such duties give rise to direct actions for compensatory damages. Rather, *Lerner*, which observed that minority stockholders were entitled to "protection against the fraudulent or illegal action of the majority[,]" involved, among other things, a claim for rescission of a reverse stock split that effectively eliminated a minority stockholder. 132 Md. App. at 53. In describing such fiduciary duties, *Lerner* relied on *Mottu v. Primrose*, 23 Md. 482, 496-98 (1865), which also involved a claim in equity to invalidate the board of directors' attempt to extend their term in office. *Lerner*, 132 Md. App. at 53. *Lerner* also relied on *Baker v. Standard Lime & Co.*, 203 Md. 270, 274-77 (1953), which involved a claim by minority stockholders for various forms of equitable relief, not compensatory damages, arising out of amendments to the corporate charter, the authorization of preferred stock, purchase and retirement of common stock, and a stock split. *Lerner*, 132 Md. App. at 53. And finally, *Lerner* relied on *Twenty Seven Trust v. Realty Growth Investors*, 533 F. Supp. 1028, 1029 (D. Md. 1982), which involved a federal securities claim. *Lerner*, 132 Md. App. at 53. In *Twenty Seven Trust*, the court relied on Maryland law's recognition of the majority stockholder's duties to the minority stockholders to establish that the breach of such duties gives rise to claims for equitable relief by minority stockholders. 533 F. Supp. at 1034-35. Thus, under the circumstances alleged by Edward here, recourse for the majority stockholder's breach of fiduciary duties would lie in his oppression count.

*Second*, to the extent Edward alleges that the board of directors duly authorized Eastland to distribute profits to its stockholders (however couched) and Edward did not

receive his rightful share, then his claim for compensatory damages would be against Eastland, as the party statutorily responsible for making that payment. CA § 2-311(d); *see also Heyn,* 174 Md. at 646-49 (characterizing an unpaid distribution as a debt of the corporation). Edward did not name Eastland as a defendant in Count II.

*Third*, to the extent Oscar and Vipa misused corporate funds, either by taking excessive compensation, taking distributions in excess of their rightful share, or by pocketing corporate funds for personal use, the injury was sustained by the corporation, not Edward personally. *See Mona*, 176 Md. App. at 705. Edward, as a minority stockholder, did not suffer an injury distinct from Eastland's that could sustain a claim for compensatory damages, which is the only remedy Edward sought in Count II. As a result and because he did not sue derivatively on behalf of Eastland, the court properly dismissed this count.[18] *Id.*

In *Waller v. Waller*, this Court discussed the importance of distinguishing between claims belonging to the individual (direct claims) and claims belonging to the corporation:

> It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock. The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder's derivative right can be asserted only through the corporation. The rule is advantageous not only because it avoids a multiplicity of suits by the various stockholders, but also because any damages so recovered will be available for the payment of debts of the

---

[18] Because the issue is not before us, we do not address whether such a claim would lie if Edward sought equitable remedies instead of compensatory damages.

corporation, and, if any surplus remains, for distribution to the stockholders in proportion to the number of shares held by each.

Generally, therefore, a stockholder cannot maintain an action at law against an officer or director of the corporation to recover damages for fraud, embezzlement, or other breach of trust which depreciated the capital stock or rendered it valueless. Where directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity. . . . The rule is applicable even when the wrongful acts were done maliciously with intent to injure a particular stockholder. It is immaterial whether the directors were animated merely by greed or by hostility toward a particular stockholder, for the wrongdoing affects all the stockholders alike.

187 Md. 185, 189-91 (1946) (citations omitted).

A direct action is appropriate only where the board has breached a duty owed directly to the shareholder and the shareholder has suffered "an injury that is separate and distinct from any injury suffered either directly by the corporation or indirectly by the stockholder because of the injury to the corporation." *Oliveira v. Sugarman*, 451 Md. 208, 240, 244-45 (2017) (quoting James J. Hanks, Jr., *Maryland Corporation Law* § 7.12(b), at 276.18). Otherwise, the claim belongs to the corporation, and if the directors improperly fail to pursue it, stockholders may pursue a derivative claim on the corporation's behalf.[19]

---

[19] Ordinarily, directors have the sole discretion to initiate litigation to enforce a corporate right. *Werbowsky*, 362 Md. at 599. A derivative action is "an extraordinary equitable device," *id.*, which "place[s] in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers,'" *Danielewicz v. Arnold*, 137 Md. App. 601, 626 (2001) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). Because Edward did not assert a derivative claim, we need not address or summarize the procedural steps and requirements of such claims.

Claims for excessive compensation and other misuses or diversions of corporate funds belong to the corporation, not the stockholders. In *Mona v. Mona Electric Group, Inc.*, where the majority stockholder allegedly used excessive compensation to reduce profits and deprive dividends to the minority stockholder, the Appellate Court explained:

> What [the minority stockholder] does not adequately address, however, is how the injury for which he sought damages—the alleged overpayment of compensation to [the majority stockholder] by the company—was personal to him. It does not follow that, merely because [the company] has two shareholders, . . . an overpayment of compensation to [the majority stockholder] is a loss to [the minority stockholder]. [The majority stockholder's] compensation was paid to him by [the company] for his role as an officer of the company. Any wrongful overpayment by the company of compensation to an officer is at most a loss to the company.

176 Md. App. at 705.

The distinction between direct and derivative claims preserves the allocation of duties and responsibilities entrusted to the board of directors under the MGCL. As discussed above, the board's managerial oversight responsibilities include setting executive compensation and declaring dividends. If directors violate the standard of care imposed by CA § 2-405.1 in either of these functions, the injury would be to the corporation because such payments would deprive *the corporation* of funds that could have been deployed for other legitimate business purposes. Thus, if the recovery is had by the corporation instead of the individual stockholder, the corporation's board of directors would then be required to exercise its managerial discretion, consistent with the standards set forth in CA § 2-405.1, to determine what to do with the recovered funds. Such judgment should be based on the facts and circumstances that exist at the time the recovered funds are received. For example, the board could decide to pay dividends, reserve funds for

33

future expansion, or raise executive pay. In contrast, a direct action by Edward, if successful, would transfer *corporate* funds from the majority stockholders to the minority stockholder in circumvention of the board of directors' oversight responsibilities, which fails to remedy the injury to Eastland. *See, e.g.*, *Bontempo v. Lare*, 217 Md. App. 81, 128-30 (2014), *aff'd*, 444 Md. 344 (2015). Claims of this nature, therefore, belong to the corporation, not to the minority stockholder.

Because Edward did not have a viable direct claim for compensatory damages and did not pursue Count II as a derivative claim on Eastland's behalf, the circuit court correctly dismissed Count II of the complaint with prejudice and without leave to amend.

### *Count III – Unjust Enrichment*

A cause of action for unjust enrichment consists of three elements: "(1) [a] benefit conferred upon the defendant by the plaintiff; (2) [a]n appreciation or knowledge by the defendant of the benefit; and (3) [t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000) (internal quotation marks and citation omitted); *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (identifying the same three elements). Damages in an unjust enrichment action are measured by the gain to the defendant and not by the loss to the plaintiff. *Mogavero v. Silverstein*, 142 Md. App. 259, 276 (2002). This is so because an unjust enrichment claim "is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Hill*, 402 Md. at 296.

Edward's claim for unjust enrichment against Oscar and Vipa is predicated on the same facts supporting his breach of fiduciary duty claim. The result is the same, and for the same reason: the benefits of excessive compensation and funds for personal use came at the corporation's expense, not Edward's directly. Accordingly, having asserted Count III in his individual capacity instead of derivatively on Eastland's behalf, the circuit court did not err in dismissing Count III with prejudice and without leave to amend.

## CONCLUSION

Edward's proposed amended complaint set forth sufficient facts to state a claim for stockholder oppression under Maryland law. The proposed amended complaint did not, however, allege sufficient facts to support Edward's direct causes of action for breach of fiduciary duty and unjust enrichment. Accordingly, we shall remand the case to the Appellate Court with instructions to remand the case to the circuit court for further proceedings consistent with this opinion.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE APPELLATE COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR HOWARD COUNTY. 50 PERCENT OF THE COSTS TO BE PAID BY PETITIONERS, AND 50 PERCENT TO BE PAID BY RESPONDENT.**

35

Circuit Court for Howard County
Case No.: C-13-CV-21-000666
Argued: June 2, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 37

September Term, 2022

EASTLAND FOOD CORPORATION, et al.

v.

EDWARD MEKHAYA

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Concurring Opinion by Booth, J., which Fader, C.J., joins.

Filed: August 31, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Respectfully, I concur with the Majority's analysis and conclusion that the Amended Complaint did not allege sufficient facts to support Count III, a claim for unjust enrichment. Pertaining to Counts I and II, I analyze these statutory claims differently than the Majority, and, therefore, do not join those portions of the opinion that discuss Counts I and II. I write separately to explain my analysis.

In this case, we must determine whether Edward has alleged sufficient facts necessary to overcome the Defendants' motion to dismiss. Specifically, we must determine whether Edward's Amended Complaint adequately sets forth a cause of action against the Defendants under the Maryland General Corporation Law (sometimes referred to as the "MGCL").[1] The Defendants are: Eastland Food Corporation ("Eastland"), a Maryland corporation formed under the MGCL; Oscar Mekhaya ("Oscar") and Vipa Mekhaya ("Vipa"), as officers and directors of Eastland; and Tisnai Thaitam, ("Tisnai") as a director of Eastland. Edward, Vipa, and Oscar are stockholders. Tisnai is not a stockholder.

We conduct a *de novo* review of matters of statutory interpretation, as well as whether a trial court's decision to grant a motion to dismiss was legally correct. *Wheeling v. Selene Finance, LP*, 473 Md. 356, 373–74 (2021). Under Maryland Rule 2-322(b)(2), the court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." This Court has explained that "[a] motion to dismiss is properly granted if the factual allegations in a complaint, if proven, would not provide a legally sufficient basis

_____

[1] The Maryland General Corporation Law, or "MGCL", is comprised of Titles 1 through 3 of the of the Corporations and Associations Article of the Maryland Code (2014 Repl. Vol, 2022 Supp.) ("CA").

for the cause of action asserted in the complaint." *Wheeling*, 473 Md. at 374. We "assume the truth of all relevant and material facts that are well pleaded and all inferences which can reasonably be drawn from those pleadings." *Id.* (quotations omitted). "A motion to dismiss on this ground may only be granted where the allegations presented do not state a cause of action." *Id.* In *Wheeling*, we reiterated that, "[i]n determining whether a plaintiff has alleged claims upon which relief can be granted, there is a big difference between that which is necessary to prove the elements, and that which is necessary to merely allege them." *Id.* (citations omitted). "Indeed, our decision does not 'pass on the merits of the claim,' but instead, we merely 'determine[] whether the plaintiff's right to bring the action.'" *Id.* (quoting *Lloyd v. General Motors Corp.*, 397 Md. 108, 122 (2007)) (alteration in original).

The general rule governing sufficiency of pleadings is set forth in Maryland Rule 2-303(b), which states that:

> Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.

Under Maryland's liberal pleading standard, "a plaintiff need only state such facts in his or her complaint as are necessary to show an entitlement to relief." *Johns Hopkins Hosp. v. Pepper*, 346 Md. 679, 698 (1997). As I will discuss in more detail, this case involves the application of the business judgment rule that has been codified by the General Assembly in Section 2-405.1 of the Corporations and Associations Article of the Maryland

2

Code ("CA") (2014 Repl. Vol, 2022 Supp.). When a complaint involves the application of the business judgment rule that applies to corporate acts undertaken by its directors, the plaintiff must plead sufficient facts to overcome the presumption of the rule in the complaint. *See, e.g., Oliveira v. Sugarman*, 451 Md. 208, 246 (2017) (stating that the petitioners' "claims were properly dismissed by the Circuit Court for failure to overcome the business judgment rule presumption"). The presumption does not end the inquiry, but merely places the burden upon the person attacking the directors' decision to prove a lack of good faith or absence of an informed basis for the challenged decision.

Starting with the four corners of the Amended Complaint, Edward alleges facts that are common to all counts, and sets forth three specific claims—two of which are statutory claims arising under the MGCL and one claim arising under common law.

**I**

### A. *The Amended Complaint – Facts Common to All Counts*

In 1999, Edward's father, Pricha Mekhayarajjananonth ("Pricha"), asked Edward to work for Eastland. If Edward agreed to come work for Eastland, Pricha explained that Edward would become an owner of Eastland, and once he was an owner, he would be paid as such. Pricha explained to Edward that

> the compensation structure for the owners of [] Eastland includes the sharing of the profits of [] Eastland with each owner receiving a percentage of profits paid as a bonus after the end of each fiscal year instead of declared dividends. While employees may also receive discretionary bonuses, the sharing of profits paid as a bonus instead of declared dividends was limited to the owners of [] Eastland.

3

Edward alleges that when he accepted employment with Eastland in 1999, the expectation of continuous employment, participation in Eastland's management, and receipt of Eastland's profits as an eventual owner were central to his decision to join Eastland. Edward contends that these expectations were reasonable under the circumstances because, among other reasons: (1) Eastland existed as a family-run business with only members of Edward's family involved in its management and operation; (2) Edward's parents, Pricha and Vipa, were Eastland's only owners; and (3) Pricha and Vipa knew Edward would be foregoing the opportunity to continue his promising engineering career to join Eastland.

Edward describes the many contributions that he made to Eastland as an employee. From April 1996 until December 2008, Pricha and Vipa were Eastland's sole stockholders, each owning a 50% interest in the company. On December 31, 2008, Pricha and Vipa caused Eastland to issue shares of stock to Edward and his brother, Oscar. As a result of the stock transactions, as of December 31, 2008, Edward and his brother, Oscar, each owned 15% of Eastland's outstanding stock, and Vipa and Pricha each owned 35%. In November 2015, Pricha ceased being a stockholder and agreed that Eastland would redistribute his stock interest in Eastland. As a result of the 2015 stock transactions, Eastland's outstanding stock is owned as follows: Edward and Oscar each own 28%; Vipa owns 35%; and a trust established for Oscar's three children owns 9%.

In the Amended Complaint, Edward sets forth his annual compensation from Eastland between 2006 and 2018, which reflects a considerable salary increase in 2008

4

when he received his initial stock in Eastland and another considerable increase in 2015 when he received additional stock in the corporation. He includes the following table:

**Edward's Annual Compensation from Eastland (2006–2018)**

| Year | Annual Compensation |
|---|---|
| 2006 | $310,132 |
| 2007 | $291,880 |
| 2008* | $457,376 |
| 2009 | $491,655 |
| 2010 | $454,835 |
| 2011 | $468,537 |
| 2012 | $492,382 |
| 2013 | $460,855 |
| 2014 | $484,648 |
| 2015** | $603,117 |
| 2016 | $609,594 |
| 2017 | $592,098 |
| 2018*** | $392,813 |

\* Edward became a stockholder.
\*\* Edward's stock ownership increased.
\*\*\* Edward's employment with Eastland was terminated in October, 2018.

Edward alleged that, consistent with Pricha's 1999 explanation of the stockholders' compensation structure, which was practiced by Eastland when Edward received his 2008 stock ownership, and his additional 13% stock ownership in 2015, his total compensation set forth in the chart above includes the following profits of Eastland that were paid to Edward in the form of a bonus instead of as a declared dividend:

5

**Bonuses Paid to Edward from Eastland**

| Date Received | Profit Paid as a Bonus Instead of as a Declared Dividend |
| --- | --- |
| 3/25/2010 | $28,783 |
| 3/24/2011 | $137,500 |
| 3/29/2012 | $153,149 |
| 4/11/2013 | $131,537 |
| 3/27/2014 | $129,991 |
| 3/26/2015 | $192,734 |
| 3/31/2016 | $191,055 |
| 4/21/2017 | $195,933 |
| 4/06/2018 | $49,678 |

Edward alleges that he expected that his: (1) employment with Eastland; (2) participation in the management of Eastland; and (3) receipt of Eastland's profits would continue for the duration of the corporation's existence.

Until August 2017, Pricha led and managed Eastland as its President and as a director. Pricha also determined the amount of Eastland's profit that each stockholder would receive as a bonus instead of a declared dividend. In August 2017, Eastland's "stockholders and directors" removed Pricha as a director and officer "for various reasons documented in the corporate minutes[.]" Among other things, Pricha had moved to Thailand and was not likely to return to the United States. In September 2017, Oscar was elected as Eastland's President, over Edward's objection.[2] In August 2018, Edward signed a directors' consent approving a credit line increase for Eastland "under express written

---

[2] Edward alleges that he objected to his brother being President because, among other things, Oscar: (1) lacked management experience; and (2) was not good with employees, and would become upset and emotional when employees would tell him what he did not want to hear, resulting in a high employee turnover rate.

6

protest." Edward argued that the corporation's "management" was growing inventory "at an alarming rate."

On or about October 2, 2018—prior to an October 12, 2018, stockholder meeting—Raymond Sherbill, an attorney who represented Eastland, sent an email to Edward's attorney at that time, bearing the subject "Annual Meeting" and attaching a "Notice of Annual Shareholder and Regular Director Meeting." In the body of the email, Mr. Sherbill wrote, in part:

> Per our call just now, attached is a draft notice of meeting of the board and stockholders for next week. . . . The anticipated draft agenda is: financial report, sales, Sapphire/IT developments, competitive environment, purchasing controls, and *hopefully introduction of a dividend study (advantages to moving to shareholders getting dividends with respect to their ownership in lieu of salaries being paid as if they were dividends.)* I anticipate that RSM McGladrey, EFC's auditors and accountants, will be there . . .

Edward asserts that, as of the October 2, 2018, email, Edward, Oscar, and Vipa, as stockholders and directors of Eastland, together with Eastland's attorneys and accountants, had direct knowledge of Eastland's long-standing practice of paying its profits in the form of bonuses to its stockholders instead of as a declared dividend.

On October 10, 2018, Edward sent an email to Uma Tuchinda, Eastland's Human Resources Manager, requesting the past 3 years of payroll data for all employees, including Oscar and Vipa, along with any "bonuses, special pay and monies transferred to employees" including Oscar and Vipa. On the same day, Ms. Tuchinda replied, stating that she had checked with Oscar and that Oscar would not allow Ms. Tuchinda to provide the requested payroll information to Edward.

7

Edward attended the Eastland stockholders' meeting on October 12, 2018, accompanied by his attorney. The meeting included a discussion concerning changes to the bylaws, the status of operations, election of directors, and the dividend study. By the close of the meeting, Edward was not re-elected to the board of directors, "without cause or reason." On October 15, 2018, "Eastland and the other stockholders" terminated Edward's employment with Eastland, "without cause and without reason."

After Edward's employment was terminated and he was removed from the board of directors, Eastland did not consider the dividend study, and Eastland has failed to pay Edward a portion of the company's profits as a bonus instead of as a declared dividend despite Edward's continued status as a stockholder.

As of October 2018, Eastland had three directors: Oscar, Vipa, and Tisnai. The Amended Complaint does not state when Tisnai became a director. However, as a director of Eastland, he is individually named as a defendant in this case.

### B. Specific Counts in the Amended Complaint

*Count I – Oppression of Minority Shareholder*

Count I is a statutory claim filed under CA § 3-413(a) against the "Defendants[,]" which seeks monetary damages and equitable relief (as specifically set forth in the prayers for relief pertaining to Count I, which I describe below), alleging that the "acts of Defendant Eastland's directors and other stockholders are illegal, fraudulent[,] and oppressive conduct as proscribed by" CA § 3-413. Edward asserts that the "illegal, fraudulent[,] and oppressive conduct substantially defeats" his "reasonable expectations as a minority stockholder," and constitute acts to "squeeze [him] out."

8

To support this statutory claim, Edward asserts the following:

- That his expectations of continued employment, participation in management, and the payout of Eastland's profits "were central to" his decision to join Eastland, and were reasonable under the circumstances.

- That he had a reasonable expectation that, after becoming a stockholder, he would not be summarily removed from Eastland's employment and management.

- Edward had, and continues to have, a reasonable expectation that, after becoming a stockholder, he would receive a share of Eastland's profits, regardless of his employment or management status with Eastland.

- The Defendants pay Oscar and Vipa excessively high salaries and other compensation, and allow them to use Eastland's funds for their personal use and gain as a scheme to divert Eastland's profits from Edward to Oscar and Vipa.

- Since terminating Edward's employment with Eastland and his removal from the board of directors, the Defendants have not and will not: (1) declare and pay a dividend to Edward; or (2) pay a portion of Eastland's profits to Edward as a "bonus instead of as a declared dividend contrary to the compensation structure" for Eastland's owners as explained to Edward by Pricha before Edward originally became a stockholder and "as practiced by" Eastland when Edward received an additional stock interest in Eastland in November 2015.

In summary, Count I alleges that the individually named Defendants engaged in conduct in violation of CA § 3-413(b)(2), asserting that these Defendants have frustrated Edward's reasonable expectations as a stockholder by engaging in oppressive conduct consisting of: (1) terminating his employment; (2) removing him from the board of directors; (3) diverting Eastland's profits from Edward to Oscar and Vipa; (4) refusing to declare and pay Edward dividends; and (5) refusing to pay Eastland's profits to Edward as a bonus instead of a declared dividend, thereby causing him damages.

9

In addition to seeking compensatory money damages, Edward is seeking a panoply of equitable remedies that this Court has determined may be available to a minority stockholder who establishes a violation of CA § 3-413(b)(2), as an alternative to involuntary dissolution—which is the only remedy set forth by the General Assembly for a violation of that section. *See Bontempo v. Lare*, 444 Md. 344 (2015); *see also Edenbaum v. Schwarcz-Osztreicherne*, 165 Md. App. 233 (2005). Specifically, Edward seeks an order providing one or more of the following remedies: (1) the appointment of a receiver, not for purposes of dissolution, but to continue the operation of Eastland for the benefit of all stockholders until the "oppressive" conduct ceases, with the court assuming continuing jurisdiction; (2) the issuance of an injunction to prohibit continuing acts of "oppressive" conduct, including, without limitations, Eastland from paying excessive salaries and other compensation to Oscar and Vipa as a scheme to divert Eastland's profits from Edward; (3) an injunction directing Defendants to declare and pay dividends for the calendar years 2018, 2019, and 2020; (4) the issuance of an injunction directing Defendants to pay Eastland's profits to Edward in the same form as those profits that are distributed to other stockholders; (5) an accounting to Edward of all income, expenses, profits, liabilities, assets, and transactions of Eastland; and (6) other equitable relief as a result of the illegal, fraudulent, and oppressive conduct proscribed by CA § 3-413.

*Count II – Breach of Fiduciary Duty*

Count II alleges "breach of fiduciary duties" against Oscar, Vipa, and Tisnai as the directors of Eastland. Although this Count has been characterized by the parties, the lower court, and the Majority as a "breach of fiduciary duty" count, for reasons I explain below,

10

and to avoid inserting confusing concepts of "fiduciary" duties into this discussion, I will refer to Count II as Edward's statutory claim against the directors—Oscar, Vipa, and Tisnai—for a violation of the directors' statutory standard of conduct arising under CA § 2-405.1(c). Although it is titled a "breach of fiduciary duty" claim, in substance, Edward is alleging that Eastland's directors violated their statutory standard of conduct that a director owes to a corporation and its stockholders. That standard, commonly referred to as the "business judgment rule," requires that a director act: (i) in good faith, (ii) in a manner each reasonably believes to be in the best interests of the corporation, and (iii) with the care that an ordinarily prudent person in a like position would use under similar circumstances. CA § 2-405.1(c). In Count II, Edward alleges that Oscar, Vipa, and Tisnai violated this standard, and further asserts that the standard requires that the directors act in a manner that benefits "all stockholders equally and not in furtherance of their personal interest or benefit." Edward also alleges that Oscar and Vipa, "as the majority stockholders" of Eastland, both owe "fiduciary duties" to Edward as a minority stockholder, not to exercise their control over Eastland to Edward's disadvantage. Edward generally alleges that the "Defendants have breached their fiduciary duties" to him.

Edward alleges breaches by Oscar, Vipa, and Tisnai *as directors of Eastland*, and against Oscar and Vipa *as majority stockholders*. Pertaining to the directors, Edward alleges that that the directors: (1) authorized Eastland to pay excessively high salaries and other compensation to Oscar and Vipa to divert profits of Eastland from Edward; (2) authorized profits of Eastland to be paid to Oscar and Vipa without payment of profits to Edward; and (3) otherwise breached their fiduciary duties as Eastland's directors. Edward

11

alleges the same breaches by Oscar and Vipa "as majority [stockholders]" for the same conduct that he alleges they undertook in their capacities as directors. Edward alleges that the actions taken by Oscar, Vipa, and Tisnai were not undertaken in good faith, nor in a manner reasonably believed to be in the best interests of Eastland, nor with the care that an ordinarily prudent person in a like position would use under similar circumstances. As for Count II, Edward seeks compensatory damages in an amount exceeding $75,000, to be determined at trial.

*Count III—Unjust Enrichment*

Count III alleges unjust enrichment against Oscar and Vipa. To support this count, Edward asserts that Oscar and Vipa were "unjustly enriched at the expense of" Edward and to Edward's detriment. Edward asserts that the unjust enrichment arose from the receipt of profits, by way of excessive salaries, that Oscar and Vipa accepted and retained these benefits, and that it is inequitable for them to retain the benefit without paying the value. Edward seeks compensatory damages in an amount exceeding $75,000, to be determined at trial.

To understand how I parse out the specific allegations in the complaint that overcome the motion to dismiss, it is useful to set forth the statutory framework that applies here.

## II

*A. Applicable Statutory Framework Under the Maryland General Corporation Law*

Under Maryland law, a corporation, large or small, is a creature of statute. A corporation's articles of incorporation or charter, issued by the State, is both a "contract between stockholders" and "between the corporation and the State." *Warren v. Fitzgerald*, 189 Md. 476, 485 (1948). The charter "is the foundational document of the company." *Impac Mortg. Holdings, Inc. v. Timm*, 474 Md. 495, 503 (2021) (citing CA §§ 2-102, 2-104). The charter specifies the types and quantity of stock the corporation may issue and defines the rights and priorities of the stockholders of the various types of stock. *Id.* at 503–04 (citing CA §§ 2-104, 2-105). It must include "a description of each class [of stock] including any preferences, conversion and other rights, voting powers, restrictions, limitations as to dividends, qualifications, and terms and conditions of redemption." *Id.* at 504 (citing CA § 2-104).

Under the MGCL, a corporation is managed by its directors.[3] Section 2-401(a) provides that "[a]ll business and affairs of a corporation, whether or not in the ordinary

---

[3] Under Title 4 of the Corporations and Associations Article of the Maryland Code, a corporation can elect to become a "close corporation" as defined by the provisions in that Title. To make such an election, the corporate charter must state that it is a close corporation. CA § 4-201. A "[c]lear reference to the fact that the corporation is a close corporation shall appear prominently: (1) At the head of the charter document in which the election to be a close corporation is made; (2) In each subsequent charter document of the corporation; and (3) On each certificate representing outstanding stock of the corporation." CA § 4-202. A close corporation is initially required to have "at least one director until an election by the corporation in its charter to have no board of directors becomes effective." CA § 4-301. Stockholders of a close corporation may elect to have no directors. If that occurs, the "stockholders may exercise all powers of directors, and the business and affairs

13

course, shall be managed by or under the direction of a board of directors."

Section 2-401(b) states that "[a]ll powers of the corporation may be exercised by or under authority of the board of directors except as conferred on or reserved to the stockholders by law or by the charter or bylaws of the corporation." In the exercise of their duties, the MGCL establishes a statutory standard of conduct, which is set forth in CA § 2-405.1. Given some legislative amendments to the standard of conduct—which this Court has yet to consider, and which affect how I would analyze Counts I and II—I find it instructive to explain some statutory and legislative history that led to its current iteration.

    *1.    The Directors' Statutory Standard of Conduct, or "the Business Judgment Rule"*

In 1976, the General Assembly enacted a statutory provision establishing a director's standard of conduct for corporate acts. CA § 2-405.1. 1976 Md. Laws Ch. 567. The standard of conduct, which remains the same today, states that:

A director of a corporation shall act:

(1) In good faith;

(2) In a manner the director reasonably believes to be in the best interests of the corporation; and

(3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.

---

of the corporation shall be managed under their direction[.]" CA § 4-303(1). "Under a unanimous stockholders' agreement, the stockholders of a close corporation may regulate any aspect of the affairs of the corporation or the relations of the stockholders, including: . . . (7) The payment of dividends or the division of profits." CA § 4-401. Notably, Eastland is not a close corporation, but a corporation organized under the MGCL.

14

CA § 2-405.1(c). Importantly, "[*a*] *director who acts in accordance with the standard of conduct* provided in this section *shall have the immunity from liability* described under § 5-417 of the Courts and Judicial Proceedings Article," CA § 2-405.1(e) (emphasis added), and this section creates a statutory presumption that "[a]n act of a director of a corporation is presumed to satisfy the standards set forth in subjection (c)[.]" CA § 2-405.1(g). This standard of conduct, commonly referred to as the "business judgment rule," mirrored the director standard of conduct that was adopted by the American Bar Association's Model Business Corporation Act 8.30(a) in effect at that time. James J. Hanks, Jr., *Maryland Corporation Law* (2d Ed. 2020, 2022 Supp.) ("Hanks") § 6.06B, 6-24. In codifying the standard for director conduct, the General Assembly replaced the common law duties that had historically governed Maryland corporations.[4]

In 1999, the General Assembly adopted a statutory amendment adding new subsections with the intent of protecting Maryland corporations from unwanted takeovers. Bernard S. Sharfman, *Understanding Maryland's Business Judgment Rule*, 8 Duquesne Bus. L.J. 1, 26–27 (2006); Senate Jud. Proc. Comm. Floor Report for Senate Bill 169, at 1 (1999) ("Senate Bill 169 makes a number of changes to strengthen Maryland's laws relating to unsolicited takeovers of corporations and real estate investment trusts."). Relevant here is the amendment limiting enforcement of the statutorily prescribed

---

[4] Notably, Hanks observes, § 2-405.1—and former § 8.30 of the Model Business Corporations Act upon which it is based—omitted any reference to "fiduciary" duties "because that term could be confused with the unique attributes and obligations of a fiduciary imposed by the law of trusts, some of which are not appropriate for directors of a corporation." Hanks, § 6.06B, 6-26; *see also* Model Bus. Corp. Act, Section 8.30 (1996).

standards to the corporation or to stockholders suing on behalf of the corporation via a derivative suit. 1999 Md. Laws Ch. 300 (S.B. 169). Specifically, the 1999 amendments added subsection (g) to Section 2-405.1, which barred direct claims against directors for violating the standard of conduct, stating:

> Nothing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation.

CA § 2-405.1(g) (1999). As I explain below, this subsection, which barred stockholders from filing direct claims against directors for violating their standard of conduct, was in effect until the General Assembly revised the statute and deleted subsection (g) in 2016.

### a. *Shenker v. Laureate Education, Inc.*

In *Shenker v. Laureate Education, Inc.*, 411 Md. 317 (2009), this Court was asked to consider whether stockholders of a corporation that was purchased in a cash-out merger could bring a breach of fiduciary duty action against directors and investors. This case arose while the above-described legislative amendments were in effect, barring direct actions against directors. *Id.* at 326, 332; CA § 2-405.1(g) (1999). In other words, because claims against directors for violating the directors' standard of conduct were limited to derivative claims, the cashed-out stockholders no longer had a right of action under the statute as they were no longer stockholders with rights to bring derivative suits on behalf of the corporation. Accordingly, the circuit court granted the defendants' motion to dismiss the action, and the Appellate Court of Maryland affirmed. *Shenker*, 411 Md. at 332–33.

This Court granted *certiorari* to determine, in relevant part, whether Section § 2-405.1 barred direct claims against directors for breach of fiduciary duty. *Id.* at

16

333.  This Court held that "in the context of a cash-out merger transaction, where the decision to sell the corporation already has been made, corporate directors *owe their shareholders common law duties* of candor and good faith efforts to maximize shareholder value, and that allegations of breach of those duties may be pursued through a direct suit by shareholders." *Id.* at 335–36 (emphasis added).  Although the holding in *Shenker* was intended to apply narrowly by limiting it to "the context of a cash-out merger transaction, where the decision to sell the corporation already has been made[,]" questions arose in the legal community "as to what *other* common law fiduciary duties  might exist[.]" Bill Carson & Scott Wilson, *The Director Duties Bill: Amendments to Section 2-405.1 of the Maryland General Corporation Law*, 49-OCT Md. B.J. 40, 41 (2016).[5]  Members of Maryland's business law community expressed concern that "*Shenker* and its progeny introduced deep uncertainty into the business world in which Maryland corporations and their boards of directors reside." *Id.* at 41.

b.  Post-*Shenker* Legislative Amendments Clarifying that Section 2-405.1 is the Sole Source of Duties Owed by a Director to a Corporation or its Stockholders

In 2015, the General Assembly introduced a bill to clarify the liability and duties of directors post-*Shenker*.  2015 S.B. 459.  Bill sponsor Senator Brian Feldman, accompanied by members of the Maryland Bar Association Business Law Section, testified before the

---

[5] As an example of this confusion, Messrs. Carson and Wilson point to *Sutton v. FedFirst Fin. Corp.*, 226 Md. App. 46 (2015), in which the Appellate Court, "in the absence of any standard [] purported to adopt Delaware corporate law."  Bill Carson & Scott Wilson, *The Director Duties Bill: Amendments to Section 2-405.1 of the Maryland General Corporation Law*, 49-OCT Md. B.J. 40, 41 (2016).

Senate Judicial Proceedings Committee to explain the bill. Jud. Proc. Comm. Hearing (Mar. 18, 2015). Senator Feldman explained that the *Shenker* decision prompted the need to clarify that CA § 2-405.1 is intended to be the *sole source* of the directors' duties. Jud. Proc. Comm. Hearing (Mar. 18, 2015). The bill, which was introduced late in the legislative session, ultimately passed unanimously in the House but was not voted on in the Senate.

In the 2016 legislative session, an identical bill was introduced. 2016 S.B. 148. At the committee hearing, bill sponsor Senator Feldman and representatives from the Maryland Bar Association Business Law Section reiterated the history behind the bill and the need for the General Assembly to clarify the scope of the statutory standard in CA § 2-405.1 and to disavow the "problematic dicta" in *Shenker*. Jud. Proc. Comm. Hearing (Jan. 27, 2016). The bill passed unanimously and was approved by the Governor on April 26, 2016. It went into effect on October 1, 2016.

I highlight two significant changes that were made to Section 2-405.1 during the 2016 Legislative Session. First, the General Assembly added subsection (i), which states that Section 2-405.1:

1. *Is the sole source of duties of a director to the corporation or the stockholders of the corporation*, whether or not a decision has been made to enter into an acquisition or potential acquisition of control of the corporation or enter into any other transaction involving the corporation; and

2. *Applies to any act of a director,* including an act as a member of a committee of the board of directors.

(Emphasis added). The plain and unambiguous language added to Section 2-405.1(i) makes it clear that the statutory standard of conduct is the "sole source" of director duties.

18

To put it differently, there are no fiduciary duties owed by a director of a Maryland corporation to the corporation or its stockholders other than the duties arising under the standard of conduct set forth in Section 2-405.1. Second, the General Assembly deleted former subsection (g)—the subsection added in 1999 to eliminate direct claims by stockholders against directors.

My plain language interpretation is a view shared by others. *See* Carson & Wilson, *supra* at 42 (stating "[w]e believe that elimination of former subsection (g) makes clear that it is the legislative intent that the standard of conduct run directly to the stockholders of a Maryland corporation under limited circumstances and that the stockholders have a direct remedy for any breach of the standard of conduct in such circumstances[]"); Hanks, § 6.06B, 6-46 (stating that the result of the 2016 legislative amendment deleting Section 2-405.1(g) "is that a stockholder's right to sue a director directly or derivatively for failure to comply with the statutory standard of conduct will be determined under applicable case law, which distinguishes between injury to the corporation (derivative claim available) and injury to the stockholder (derivative claim not available) as was the case prior to the addition of Section 2-405.1(g) in 1999").

The plain text and statutory history of the 2016 amendments to Section 2-405.1 clearly reflect that the business judgment rule applies to direct stockholder claims. Because this Court has not had an opportunity to consider these legislative changes to Section 2-405.1,[6] this case is an opportunity for this Court to confirm the proper

---

[6] In *Oliveira v. Sugarman*, 451 Md. 208, 220 (2017)—filed three months after the amendments went into effect—this Court reviewed the question of whether the

19

interpretation of the current version of this statute. In Part III, I explain how I apply these legislative amendments to Edward's claims in this case.

Having addressed my view of the proper scope and application of the directors' standard of conduct, I turn next to some of the statutory rights and duties conferred upon directors, which—as the statute prescribes—must be viewed through the lens of the application of the business judgment rule.

### 2. *Directors' Authority to Declare Distributions*

Notably, the directors have the right, not the duty, to declare a distribution, CA §§ 2-301(a), 2-309(b), including a "declaration or payment of a dividend[] . . . [,]" CA § 2-301(b)(1).[7] Under the MGCL, and subject to the terms of the corporate charter,

---

petitioner/stockholders' claims were direct stockholder claims "not subject to the business judgment rule." In that case, this Court did not reach the question of whether the business judgment rule applied to direct actions because the Court concluded that the claims were improperly brought as direct actions rather than derivative actions. *Id.* at 246. However, this Court appeared to assume that the business judgment rule did not apply to direct claims. *See id.* at 222-23 ("To seek judicial review of a board's business decision under the business judgment rule, shareholders must file a derivative suit on behalf of the corporation.").

In my view, in its opinion below, the Appellate Court made a similar misstatement concerning the application of the directors' standard of conduct when the court stated that the business judgment rule does not apply in direct actions. *Mekhaya v. Eastland Food Corp.*, 256 Md. App. 497, 529 (2022) (quoting *Shenker*, 411 Md. at 345, for the proposition that, where a stockholder can establish a right to bring a direct action by demonstrating the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation, "the business judgment rule does not apply[]"); *also citing* to *Oliveira*, 451 Md. at 230–31.

[7] The MGCL does not define the word "dividend." It does, however, define "distribution." CA § 2-301 states:

(a)(1) In this subtitle, "distribution" means:

20

directors may authorize a distribution if, after the distribution, the corporation would not be insolvent, either by being unable to pay debts as they come due in the usual course of business, or by its assets being less than the sum of its liabilities plus senior liquidation preferences. CA §§ 2-309, 2-311. A Maryland corporation may make a distribution from its net earnings in the current or preceding fiscal year, or from the sum of net earnings from the preceding eight fiscal quarters. *Id.* at § 2-311(a)(2). Regardless of the basis for the distribution, the decision is entrusted solely to the *directors of the corporation*. The Maryland corporation statute specifically states that "[i]f authorized by its board of directors, a corporation may make distributions to its stockholders, subject to any restriction in its charter and the limitations in § 2-311 of this subtitle." CA § 2-309(b). Similarly, a corporation may distribute its capital surplus only "[b]y resolution of its board of directors[.]" *Id.* at § 2-304(a). Ultimate authority, at all times, rests with the directors, although the board may delegate to an executive committee and other committees its powers related to distributions, *id.* at § 2-411(a), and may delegate to a corporate officer

---

|     |      |                                                                                                                                                        |
| --- | ---- | ------------------------------------------------------------------------------------------------------------------------------------------------------ |
|     | (i)  | A direct or indirect transfer of money or other property of the corporation in respect of any of its shares; or                                         |
|     | (ii) | An incurrence or forgiveness of indebtedness by a corporation to or for the benefit of the corporation's stockholders in respect of any of its shares.  |

(2) "Distribution" does not include a stock dividend or stock split authorized in accordance with § 2-309(c) of this subtitle.

(b)  A distribution may be in the form of:
(1) A declaration or payment of a dividend;
(2) A purchase, redemption, whether or not at the option of the corporation or the stockholders, or other acquisition of shares; or
(3) An issuance of evidence of indebtedness.

the power to fix the amount and other terms of the distribution, *id.* § 2-309(d). The MGCL, which confers statutory authority on the *directors* to make distributions[8] in the absence of an agreement to the contrary, is consistent with general corporate principles. *See* 11 Fletcher Cyclopedia of the Law of Corporations. § 5349 (September 2022 update) ("Unless otherwise provided by agreement, the authority to declare dividends . . . is solely vested in the board of directors . . . ." (footnote omitted)).

Not only is the board of directors *authorized* to make distributions under CA § 2-309, but directors have a concomitant *personal liability* where a director votes for, or assents to, a distribution that violates CA § 2-311. Such actions are not shielded by the business judgment rule. *See* CA § 2-312(a) (stating that "[i]f it is established that the director's duties were not performed in compliance with § 2-405.1 of this title, a director who votes for or assents to a distribution made in violation of the charter or § 2-311 of this subtitle is personally liable to the corporation for the amount of the distribution that exceeds what could have been made without violating the charter or §2-311[.]").

*3. Stockholders' Authority*

The stockholders "of a corporation are its owners, but not its managers." *Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672 (2007) (citing *Werbowsky v. Collomb*, 362 Md. 581, 599 (2001) ("Except to the extent that a transaction or decision must, by law or by virtue of the corporate charter, be approved by the [stockholders], the directors, either

---

[8] By contrast, as discussed *supra*, n.3, where a corporation has elected to become a close corporation, the stockholders may regulate any aspect of the affairs of the corporation, including "[t]he payment of dividends or the division of profits." CA § 4-401(a)(7).

directly or through the officers they appoint, exercise the powers of the corporation."); *also citing* CA § 2-401). As far as management responsibilities, unless modified by agreement, the MGCL limits the stockholders' management role in the corporation to the election of the directors. CA § 2-404(b). With certain exceptions, "[t]he stockholders of a corporation may remove any director, with or without cause, by the affirmative vote of a majority of all of the votes entitled to be cast generally for the election of directors[.]" *Id.* at § 2-406(a). One such limitation on the stockholders' ability to remove a director for cause is if the charter provides otherwise. *Id.* at § 2-406(a)(2). The officers of the corporation, in turn, are elected by the directors. CA § 2-413.

4. *A Summary of Some Key Provisions of the MGCL Related to Corporate Management*

I summarize some of the key provisions of the MGCL pertaining to corporate management that govern my review of the four corners of the Amended Complaint. First, the MGCL applies to corporations formed under its provisions, whether small or large. Under the MGCL, the "business and affairs of the corporation . . . *shall* be managed under the direction of a board of directors." CA § 2-401(a) (emphasis added). Additionally, "[a]ll powers of the corporation may be exercised by or under authority of the board of directors except as conferred on or reserved to the stockholders by law or by charter or bylaws of the corporation." *Id.* at § 2-401(b). Such management decisions include: (1) the decision to authorize distributions, *see* CA § 2-309(b); (2) the right to appoint and remove officers, *see* CA § 2-413, (3) the right to appoint an executive committee composed of one

23

or more directors, and to delegate to those committees any powers of the board, subject to statutory limitations, *see* CA § 2-411(a).

Maryland's business judgment rule has been codified in CA § 2-405.1(c), which provides that a director shall act: (1) in good faith; (2) in a manner the director reasonably believes to be in the best interests of the corporation; and (3) with the care that an ordinarily prudent person in a like position would use under similar circumstances. Section 2-405.1(g) states that "[a]n act of a director of a corporation is presumed to be in accordance with subsection (c)." Once a challenger "presents evidence adequate to rebut the presumption, the burden of production shifts back to the corporation or the directors, as the case may be, to present evidence that the directors acted in accordance with Section 2-405.1." Hanks, § 6.09, 6-75.

5.    *Stockholder's Remedies Under CA § 3-413*

Another provision of the MGCL permits a minority stockholder to seek equitable relief in the form of involuntary dissolution where a stockholder can establish that "[t]he acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." Specifically, and subject to an exception not relevant here, CA § 3-413(b) provides as follows:

> [A]ny stockholder entitled to vote in the election of directors of a corporation may petition a court of equity to dissolve the corporation on grounds that:
>
> (1) The stockholders are so divided that they have failed, for a period which includes at least two consecutive annual meeting dates, to elect successor to directors whose terms would have expired on the election and qualification of their successors; or

(2) The acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent.

As I will discuss more fully below, in *Bontempo v. Lare*, 444 Md. 344 (2015), this Court adopted the holding of *Edenbaum v. Schwarcz-Osztreicherne*, 165 Md. App. 233 (2005), that, when a minority stockholder has established that "directors or those in control" have engaged in oppressive conduct, a court may grant equitable relief short of dissolution. Given that Edward, in his Amended Complaint, seeks equitable relief as described in those cases, it is instructive to discuss them in some detail.

a. *Edenbaum v. Schwarcz-Osztreicherne*

*Edenbaum* involved a closely-held corporation that operated an adult care facility. 165 Md. App. at 233. The corporation was owned by two stockholders—the majority stockholder owning a 51% interest and the minority stockholder owning a 49% interest. *Id.* at 239. The parties entered into a written stockholders' agreement, which stated that "the corporate charter and by-laws shall be amended, and are hereby deemed to be amended, to reflect the provisions of the Shareholder's Agreement." *Id.* The majority stockholder, an experienced manager of assisted living facilities, was the person in charge of admissions, hiring, billing, and administration of the facility. *Id.* at 239–40. The minority stockholder was a geriatric nurse who provided patient care and house maintenance at the facility. *Id.* at 238, 240. The parties did not execute a separate employment agreement, but the stockholders' agreement contained specific details about their respective job titles, responsibilities, and salaries. *Id.* at 238–40. Specifically, under the agreement, the majority stockholder had the authority to make all business decisions

25

for the corporation. *Id.* at 239–40. After he became dissatisfied with the minority stockholder's operation of the facility, he terminated her employment. *Id.* at 241. The minority stockholder then sued the majority stockholder and the corporation for breach of contract, and also sought dissolution of the corporation under CA § 3-413, on the basis of "illegal, oppressive and/or fraudulent" conduct by the majority stockholder. *Id.*

The corporation and majority stockholder contended that, insofar as the stockholders' agreement spelled out the job descriptions, salaries, and work duties of the stockholders as employees of the facility, it functioned as an employment agreement—an argument that the Appellate Court accepted while also noting that the agreement was "more modest in scope" as to their rights as stockholders. *Id.* at 248. The trial court found that the minority stockholder was properly discharged under that agreement. *Id.* at 250. Because the minority stockholder had not appealed that ruling, the Appellate Court had no occasion to discuss whether she was an at-will employee. *Id.* at 250–51. But the Appellate Court reversed the circuit court's decision that the minority stockholder was entitled to employment-related relief—*i.e.,* salary—as opposed to profits owing to the owners of the corporation. *Id.* at 250–51.

In her cross-appeal, the minority stockholder contended that the circuit court abused its discretion in dismissing her request for involuntary dissolution of the corporation. *Id.* at 254. She argued that the court should have granted that request on the ground that the majority stockholder "engaged in oppressive conduct because his conduct substantially defeated her reasonable expectations as" a stockholder. *Id.* (internal quotations omitted).

26

The Appellate Court reviewed the provisions of CA § 3-413(b)(2), which permits a court to dissolve a corporation on the ground that the "acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." *Id.* at 254–55. Observing that "oppressive" conduct is not defined by the statute, the court "surmise[d] that it does not necessarily involve 'fraudulent' or 'illegal' conduct." *Id.* at 255. The Appellate Court looked to other states, as well as commentators, for an apt definition of "oppressive conduct" in this context. *Id.* at 255–56. The court noted that Hanks defined the term as "conduct that substantially defeats the reasonable expectations of a stockholder." *Id.* at 256 (citing Hanks § 11.7(b)). "Or, in the more precise terminology of one of our sister states, 'conduct that substantially defeats the 'reasonable expectations' held by minority [stockholders] in committing their capital to the particular enterprise.'" *Id.* at 256 (citing *Matter of Kemp & Beatley, Inc.*, 64 N.Y.2d 63, 484 N.Y.S.2d 799, 473 N.E.2d 1173, 1179 (1984)).

The court observed that the "so-called 'reasonable expectations' view has been adopted, either as the sole test of oppressive conduct or as one such test, by a number of other state courts." *Id.* (citations omitted). The Appellate Court noted that "the typical characteristics of a closely held corporation are: (1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." *Id.* at 257 (citations omitted).

The Appellate Court stated that

the very nature of a closely held corporation makes it possible for a majority [stockholder] to 'freeze out' a minority [stockholder], that is, deprive a minority [stockholder] of her interest in the business or a fair return on her

27

investment. The limited market for stock in a closely held corporation and the natural reluctance of potential investors to purchase a noncontrolling interest in a closely held corporation that has been marked by dissension can result in a minority [stockholder's] interest being held 'hostage' by the controlling interest, and can lead to situations where the majority 'freeze out' minority [stockholders] by the use of oppressive tactics.

*Id.* at 257–58 (citations omitted) (cleaned up). The Appellate Court explained that, because of the "predicament" in which a minority stockholder is left when a "freeze out occurs," courts in other jurisdictions have looked at the majority stockholder's "alleged 'oppressive' conduct, in terms of the 'reasonable expectations' held by minority [stockholders] in committing their capital to the particular enterprise." *Id.* at 258. (citing *Kemp & Beatley*, 473 N.E.2d at 1179–80). The Appellate Court summarized the "reasonable expectations" view of oppressive conduct from other states that have adopted the doctrine as recognizing

that a minority [stockholder] who reasonably expects that ownership in the corporation would entitle him to a job, a share of the corporate earnings, and a place in corporate management would be oppressed in a very real sense when the majority seeks to defeat those expectations and there exists no effective means of salvaging the investment. But, we caution, oppression should be deemed to arise only when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the petitioner's decision to join the venture. It should not be deemed oppressive simply because the petitioner's subjective hopes and desires in joining the venture are not fulfilled. That is to say, disappointment alone should not necessarily be equated with oppression.

*Id.* at 258 (cleaned up).

Although the Appellate Court held that the minority stockholder was not entitled to employment-related relief as a stockholder, the court held that she had been oppressed by the majority stockholder when her termination "defeated her reasonable expectations that she would be employed by the corporation, receive a salary, and take part in its

28

management." *Id.* at 259. The court remanded the case to the circuit court to consider other possible equitable remedies. *Id.* at 261. Thus, the court looked to her expectation of employment with the company (together with her expected role in management) as a gauge for measuring oppression, even though it held that she was not entitled to employment-related relief in the form of post-termination salary.

The Appellate Court noted that, although CA § 3-413 only mentions "dissolution as a remedy for oppressive conduct," the court stated that it was joining other courts "which have interpreted their similar statutory counterparts to allow alternative equitable remedies not specifically stated in the statute." *Id.* at 260 (quotations omitted). The Appellate Court listed a non-exhaustive set of alternatives to dissolution that might be appropriate in a particular case:

(a) The entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date;

(b) The appointment of a receiver, not for the purposes of dissolution, but to continue the operation of the corporation for the benefit of all the stockholders, both majority and minority, until differences are resolved or "oppressive" conduct ceases;

(c) The appointment of a "special fiscal agent" to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose;

(d) The retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or "special fiscal agent";

(e) The ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated;

(f) The issuance of an injunction to prohibit continuing acts of "oppressive" conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive;

(g) The ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital;

(h) The ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined according to a specified formula or at a price determined by the court to be a fair and reasonable price;

(i) The ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court;

(j) An award of damages to minority stockholders as compensation for any injury suffered by them as the result of "oppressive" conduct by the majority in control of the corporation.

*Id.* at 260–61 (quoting *Baker v. Commercial Body Builders, Inc.*, 507 P.2d 387, 395–96 (Or. 1973)). The Appellate Court remanded the case to the circuit court to consider other possible remedies. *Id.* at 261.

### b. *Bontempo v. Lare*

In *Bontempo*, this Court considered, among other things, the limit of equitable tools available to minority stockholders to remedy stockholder oppression. 444 Md. at 344. The case involved a minority stockholder and employee of a corporation and a husband and wife who, together, were majority stockholders of the corporation. *Id.* at 349. The minority stockholder assented to the terms of a stockholder agreement and an amended and restated stockholder agreement that acknowledged his 45% ownership in the company and designated triggering events that would require a stockholder to sell the stockholder's

interest, including termination of the stockholder's employment with the corporation "for good cause." *Id.* at 350–51.

The minority stockholder worked with the husband to grow the business, but, over time, their relationship deteriorated. *Id.* at 352–54. The minority stockholder and the husband disagreed about business strategy, salaries, stockholder distributions, and the minority stockholder's job performance. *Id.* at 353–54. After they failed to reach an agreement to split the corporation, the husband proposed a separation agreement, which the minority stockholder declined to consider and refused to sell his shares. *Id.* at 354. In response, the husband fired him. *Id.* The minority stockholder was no longer an employee of the corporation, but he remained an officer, director, and stockholder of the corporation. *Id.* at 355. Eventually, the minority stockholder resigned from his director position but retained his 45% ownership of stock. *Id.*

The minority stockholder filed an action in the circuit court including five counts. *Id.* Relevant here is the minority stockholder's direct claim against the majority stockholders under CA § 3-413 "seeking a panoply of equitable relief for [the minority stockholder] under that statute based on his status as a [stockholder] of [the corporation] and the alleged 'illegal, fraudulent, and oppressive' conduct of the [majority stockholders] with respect to him." *Id.* at 356. As part of these remedies, the minority stockholder sought reinstatement of his status as an employee, "or to award other employment related relief." *Id.* at 349. The circuit court reviewed the minority stockholder's direct claim under CA § 3-413 and applied the "reasonable expectations" test as articulated in *Edenbaum*. *Id.* at 357. The circuit court found that the minority stockholder's reasonable expectations had

31

been defeated, and, in fashioning relief, determined an equitable remedy short of dissolution under § 3-413. *Id.* at 357–58. The circuit court found that the stockholder was an at-will employee, and in fashioning a lesser remedy, "decided not to require employment-related relief without an oral or written agreement to support that relief[.]" *Id.* at 374.

On appeal, the Appellate Court affirmed the circuit court with respect to the minority stockholder's CA § 3-413 claim. *Id.* at 361–62. The parties then cross-petitioned this Court for a writ of *certiorari*. *Id.* at 362. This Court granted *certiorari*, and, in affirming the circuit court, adopted the "reasonable expectations" test for measuring minority stockholder oppression, and held that "a court of equity may employ other equitable tools, short of dissolution, to remedy [stockholder] oppression." *Id.* at 348. After extensively describing the Appellate Court's analysis in *Edenbaum*, we cited with approval the "non-exhaustive set of alternatives to dissolution that might be appropriate in a particular case[.]" *Id.* at 368. We explained that:

> A court acting under CA § 3–413 to fashion a remedy less drastic than dissolution is not required to match its remedy to an expectation of the minority shareholder. (Indeed, the default remedy—dissolution—may bear no correlation to any expectation of a shareholder.) In particular, a court should take into account not only the reasonable expectations of the oppressed minority shareholder, but also the expectations and interests of others associated with the company. Inherent in the notion that a court of equity may devise a remedy other than the statutory remedy invoked by the minority shareholder is that there are other interests at stake besides those of the oppressed or disaffected shareholder. The existence and operation of the corporation—an entity that is legally distinct from any of its owners—affects not only the complaining and controlling shareholders, but also many others who may be associated with or depend on the company—other shareholders, its management, employees, and customers. Dissolution—capital punishment for the corporation—affects those parties as well.

32

*Id.* at 370. We explained that "'[a] reasonable expectation' for purposes of the corporate dissolution statute is simply a way of detecting oppression, but it does not dictate the relief that an equity court is to grant." *Id.* at 371. We stated that while the minority stockholder "may have had a reasonable expectation of a future relationship" with the corporation "as an employee, officer, director, and shareholder, that is a far cry from an employment agreement that entitles him to specific employment-related relief—*i.e.*, a specific position within the company with specific duties, pay, and conditions of employment." *Id.* For example, we observed, "[o]ne might envision a situation in which a minority shareholder reasonably believed, upon committing capital to an entity, that one day he would advance to an executive position with the enterprise and in which, as a result of oppressive conduct of the majority shareholder, the minority shareholder has never been considered for any management position." *Id.* at 371–72. We stated that "[a] court acting under the authority of the corporate dissolution statute would be venturing far afield to order the company to hire the shareholder into a particular position with particular duties at a specified salary." *Id.* at 372.

Analyzing the facts of this case, we determined that the circuit court did not abuse its discretion in finding that the minority stockholder was not "entitled to employment-related relief—whether reinstatement or the monetary damages he is primarily interested in[,]" as those remedies "would [] convert a discretionary equitable remedy into a substantive legal right." *Id.* at 374.

In summary, we held

that the measuring stick for 'oppression' of a minority shareholder—the shareholder's 'reasonable expectations' upon becoming an owner of the

33

company—does not dictate the nature of equitable relief (short of corporate dissolution) that a trial court must impose. In fashioning relief, the trial court may properly take account of the viability of the corporation, and the impact of the relief on others associated with the corporation, including other shareholders, management, employees, and customers. Employment-related relief, such as pay-related monetary damages or a requirement that the corporation employ the minority shareholder, is unlikely to be appropriate in the absence of a written or oral employment agreement.

*Id.* at 349. Reviewing the circuit court's ruling in the context of the particular facts of the case, we held that the trial court in this case did not abuse its discretion in deciding on appropriate relief. *Id.* at 378.

### B. A Word About Direct Stockholder Claims Versus Stockholder Derivative Claims

When a stockholder brings a claim against a Maryland corporation, it is necessary to determine whether the suit is a derivative suit or a direct action. "A derivative suit is an action by a stockholder that derives from the right to enforce a legal right of the corporation against another person. The suit is brought in the name and right of the corporation." Hanks, § 7.22A, 7-65. This is because the corporation is the real party in interest, and the substantive claims belong to the corporation. *Werbowsky*, 362 Md. at 599 (citations omitted). Maryland courts distinguish between direct and derivative claims brought by stockholders by looking at (1) the nature of the wrong alleged, and (2) the relief that the plaintiff would receive if successful. *Oliveira*, 451 Md. at 230.

A stockholder "may bring a direct action against the corporation, its officers, directors, and other [stockholders] to enforce a right that is personal to him." *Mona*, 176 Md. App. at 697. Direct claims require a plaintiff to have suffered a "distinct injury" separate from any harm suffered by the corporation, not that the stockholder has suffered

34

an injury distinct from other stockholders. *Oliveira*, at 231, 242. This Court has stated that "[t]he remedy that a [stockholder] seeks must benefit the [stockholder] as an individual, not the corporate entity." *Id.* at 231.

Derivative claims, on the other hand, involve a corporate right brought on behalf of the corporate entity, rather than the stockholder, with any recovery belonging to the corporate entity, not the plaintiff stockholder. *See id.* at 223; *Boland v. Boland*, 423 Md. 296, 328 (2011). Derivative actions have been described as "an extraordinary equitable device to enable shareholders to enforce a corporate right that the corporation failed to assert on its own behalf." *Werbowsky*, 362 Md. at 599. Because derivative claims require that the corporation refused to assert its own right, plaintiffs are required to "seek a corporate decision on whether to maintain a lawsuit, a prerequisite known as the 'demand requirement.'" *Boland*, 423 Md. at 330. That is, a stockholder must "allege and prove that he requested the directors to institute suit in the name of the corporation, and they refused." *Waller v. Waller*, 187 Md. 185, 192 (1946).

Where a harm is suffered by both the stockholders and the corporation alike, a stockholder derivative claim is the appropriate action. *Oliveira*, 451 Md. at 240.

### III

Against the framework of the applicable law, I turn to the allegations set forth in the Amended Complaint. First, it is important to note that Edward has not filed this claim as a derivative action, but as a direct one in his capacity as a minority stockholder. The Amended Complaint has not been filed on Eastland's behalf. Indeed, Eastland is a defendant, not a plaintiff. Nor has Edward alleged that he requested the directors to initiate

35

suit in the name of Eastland, and they refused. Accordingly, we must consider whether the various counts pleaded by Edward state direct claims that he is entitled to make in his capacity as a minority stockholder.

Edward has filed this action in his capacity as a minority stockholder against several defendants—Eastland; Oscar, and Vipa, "as stockholders, directors and officers" of Eastland; and Tisnai, as a director of Eastland. Edward has pleaded certain facts in the Amended Complaint that are common to all counts. Counts I and II are statutory claims and Count III arises under common law. Count I, titled "Oppression of a Minority Stockholder[,]" has been filed against all of the Defendants. Count II, titled "Breach of Fiduciary Duties[,]" has been filed against Oscar, Vipa, and Tisnai "as directors of" Eastland, and also against Oscar and Vipa "as majority stockholders." Count III, titled "Unjust Enrichment" has been filed against Oscar and Vipa.

### A. *Edward Has Failed to State a Claim for Unjust Enrichment*

Taking the counts out of order and starting with Count III, I agree with the Majority that Edward has failed to state a claim for unjust enrichment. Maj. Slip Op. at 34–35. Under Maryland law, a cause of action for unjust enrichment consists of three elements: "(1) [a] benefit conferred upon the defendant by the plaintiff; (2) [a]n appreciation or knowledge by the defendant of the benefit; and (3) [t]he acceptance or retention by the defendant of a benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000) (citations omitted). As the Majority correctly notes, damages in an unjust enrichment action are measured by the *gain* to the defendant and not by the *loss* to

36

the plaintiff. Maj. Slip Op. at 34. Edward did not confer any benefit upon Vipa and Oscar in the form of excessive salaries or compensation. Any such claim would lie in Eastland, and Edward has not filed a derivative claim on behalf of Eastland.

### B. Edward Has Pleaded Sufficient Facts to Support Statutory Claims Arising Under the MGCL

Edward has alleged two statutory counts that arise under the MGCL—Count I, a claim arising under CA § 3-413(b)(2), which permits a stockholder to petition for involuntary dissolution under certain circumstances including where "[t]he acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent[;]" and Count II, a claim against Eastland's directors arising under CA § 2-405.1(c) alleging a violation of the directors' statutory standard of conduct. As I describe below, I believe that Edward's complaint alleges sufficient facts to assert a statutory claim under CA § 3-413(b)(2) and CA § 2-405.1(c), although he has not sought an available form of damages to proceed under the latter. Below, I discuss the facts set forth in the complaint that I find are sufficient to support the statutory claims.

First, as noted above, Edward has not filed a derivative claim. The allegations that relate to the harm allegedly suffered by Eastland—such as the general corporate harm allegedly suffered by the decision to pay "excessively high salary and other compensation to [Oscar and Vipa]"—are claims that may only be brought on behalf of Eastland and, therefore, should not be considered.

In light of the fact that this case is the first instance in which this Court has considered the effect of the 2016 legislative amendments to the directors' statutory

37

standard of conduct, which now provides a stockholder with a right to bring a direct claim against corporate directors for violating the business judgment rule, I explain how such a claim should be analyzed.

       1.       *Count II—Statutory Claim for a Violation of the Directors' Standard of Conduct*

In *Plank v. Cherneski*, 469 Md. 548 (2020), this Court held that a breach of fiduciary duty may be actionable as an independent cause of action. To establish a breach of fiduciary duty, a plaintiff "must demonstrate: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Id.* at 625. "The remedy for the breach is dependent upon the type of fiduciary relationship, and the historical remedies provided by law for the specific type of fiduciary relationship and specific breach in question, and may arise under a statute, common law, or contract." *Id.* We stated in *Plank* that a "court should consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis." *Id.* In so doing, if

> the plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract or common law applicable to the specific type of fiduciary relationship and the specific breach alleged, the court should permit the count to proceed. The cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct.

*Id.* at 625–26.

Applying this framework here, Edward has identified a statutory duty that Eastland's directors owe to him under CA § 2-405.1.[9]  Specifically, the directors owe Edward a duty to act: (1) in good faith; (2) in a manner the director reasonably believes to be in the best interests of the corporation;[10] and (3) with the care that an ordinarily prudent person in a like position would use under the circumstances.

Edward has overcome the presumption of the business judgment rule by setting forth sufficient facts, which, if proven, would demonstrate Eastland's historical practice of paying corporate profits to stockholder/employees in the form of bonuses as opposed to dividends.  The Amended Complaint sets forth Edward's annual compensation for the years 2006 through 2018, which reflects considerable increases in 2008 and 2015—the years that corresponded with Edward becoming a stockholder, as well as his increase in stock ownership.  Edward alleges, in specific amounts, sums that he contends were paid as

---

[9] Although Edward alleges in Count II that Oscar and Vipa, in their capacity as majority stockholders, owe him "fiduciary duties," which he contends they breached, he has not identified any specific fiduciary duties that arise by virtue of their status as stockholders.  The duties identified by Edward in Count II all relate to directors' duties that the MGCL vests within Eastland's board of directors.  Accordingly, for purpose of my analysis, I consider only those statutory claims arising under CA § 2-405.1.

[10] I realize that the standard of conduct requires that Edward prove that the directors' actions were not in the best interest of the *corporation*.  CA § 2-405.1.  I observe, however, that the 2016 amendments provided stockholders with a right to file a direct claim against directors for a failure to comply with the statutory standard of conduct where the stockholder can establish an injury that is personal to the stockholder (as opposed to an injury suffered by the corporation in the form of a derivative claim).  In light of this amendment, I conclude that, one way a stockholder would be able to prove that the directors were not acting in the best interest of the corporation would be to establish that the directors were acting in a manner that does not benefit all stockholders equally, and, instead, were acting in a manner that furthered their personal interest or benefit, which in turn caused the stockholder to suffer a distinct injury.

annual bonus payments in lieu of distributions of profits that would have been commensurate with his stock ownership interest. He alleges that up until August 2017, Pricha, as Eastland's President and director, determined the amount that each stockholder would receive as a bonus instead of a declared dividend or distribution.

Edward alleges that Eastland's directors and stockholders, as well as its accountants and attorneys, all had direct knowledge of Eastland's longstanding practice of Eastland paying its profits in the form of bonuses to its stockholders, instead of paying dividends. To support this allegation, he quotes from an email that Eastland's attorney sent to Eastland's stockholders ten days prior to the October 2018 annual stockholders' and regular directors' meeting, which reflects that the agenda included discussion pertaining to "*introduction of a dividend study* (*advantages to moving to shareholders getting dividends with respect to their ownership in lieu of salaries being paid as if they were dividends*)[,]" and also reflects that the corporate accountants would be present. Edward further alleges that he attended the stockholders' meeting accompanied by his counsel, and that there was a discussion of the dividend study. During the time period in which he was still a director, Edward alleges that he requested payroll data for all employees, including Oscar and Vipa, along with any bonuses, special pay, and money transferred to either of them, and he was advised that Oscar would not allow that information to be provided to him.

Edward alleges that, after he was removed from the Board and his employment was terminated, Eastland did not consider the dividend study further and has since failed to pay Edward a portion of Eastland's profits despite his continued status as a stockholder. In my view, Edward alleges with specificity a historical practice of paying Eastland's profits to

40

its stockholder/employee as bonus payments instead of stockholder distributions—a practice that Edward alleges the directors have continued with respect Oscar and Vipa, but not to him. In other words, Edward has alleged facts that, if proven, would demonstrate that Oscar, Vipa, and Tisnai were not acting in good faith, were not acting in the best interest of all of the stockholders, and stood to receive some personal benefit when they continued to pay corporate profits only to stockholder/employees in the form of bonus compensation instead of paying the corporate profits to the stockholders commensurate with their percentage ownership interest.

I would conclude that Edwards's allegations, if true, are sufficient to establish that the directors are paying Eastland's profits in a manner that does not treat all stockholders equally and in furtherance of two director/stockholders' personal interest or benefit. That is, these acts are not being undertaken with the care that an ordinarily prudent person in a like position would use under similar circumstances.

I further determine that Edward has alleged that he has suffered a distinct injury separate and apart from any injury suffered by Eastland. In other words, the directors' decision to pay Eastland's profits to its stockholders (other than to Edward) as bonus payments instead of in the form of distributions, is causing a separate and distinct injury to Edward. That is, unlike the other Eastland stockholders, Edward is not receiving Eastland's profits, and is therefore not being treated equally as far as the receipt of corporation profits.

Turning to Edward's remedy, as *Plank* instructs, "[t]he remedy for the breach is dependent upon the type of fiduciary relationship, and the historical remedies provided by

41

law for the specific type of fiduciary relationship and specific breach in question, and may arise under a statute, common law, or contract." *Id.* A "court should consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis." *Id.* In his specific prayers for relief related to Count II, Edward asserts that he is seeking compensatory damages. In other general paragraphs of the complaint common to all counts, as well as the remedies he specifically seeks for a violation of Count I that I describe below, he seeks equitable remedies in the nature of the continued payment of corporate profits that he alleges he historically received while a stockholder/employee, which are personal to him as a stockholder, and not Eastland, as a corporation.

Based upon the statutory duty that now flows to the stockholders under CA § 2-405.1 where the stockholder can establish a direct claim through a distinct personal harm, under the *Plank* framework, I would look to traditional remedies historically provided for this type of injury, which a trial court could then apply on a case-by-case basis. Here, I observe that the Appellate Court in *Edenbaum* identified the non-exhaustive list of equitable remedies, which this Court adopted in *Bontempo*. These types of equitable remedies have been recognized for similar injuries where oppressive conduct interferes with the minority stockholder's reasonable expectations. Given this Court's adoption of these non-exhaustive equitable remedies that apply when a stockholder establishes oppressive conduct, I would hold that these remedies may similarly apply to a violation of a statutory standard of conduct arising under CA § 2-405.1 where a violation results in the same injury. Those types of equitable remedies, as well as others, may be considered based upon the injury alleged and proven. For example, to the extent Edward claims that that the

directors diverted to themselves profits to which he was entitled, he may be able to establish that he is entitled to the equitable remedy of disgorgement. Again, these equitable remedies are dependent upon the particular facts alleged and proven.

As noted above, in my view, the Amended Complaint alleges sufficient facts necessary to overcome the presumption of the business judgment rule that applies to the board of directors' standard of conduct. Nonetheless, the only relief sought in Count II are compensatory damages, which are not available for breaches of the duties identified in that claim. For that reason, I agree that Count II was properly dismissed and would reverse the judgment of the Appellate Court. Given that this case is the Court's first opportunity to consider a stockholder's direct claim for a violation of the directors' statutory standard of conduct, and my discussion of the types of equitable remedies that are available for such a claim, on remand, if the Plaintiff, Edward Mekhaya, seeks leave to amend his prayers for relief on Count II, the court may consider such a request in its discretion.

2.    *Count I—Statutory Claim for Stockholder Oppression*

For the same reasons that I have determined that Edward states a statutory claim under Count II for a violation of the directors' standard of conduct under CA § 2-405.1, I similarly determine that Edward has stated a claim under CA § 3-413(b)(2) that would permit a court to consider equitable remedies short of involuntary dissolution to which a minority stockholder may be entitled upon proof that the "acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent"—remedies that this Court has sanctioned in *Bontempo.* 444 Md. at 365. However, my basis for this conclusion is grounded in my view that Edward's Amended Complaint sets forth sufficiently particular

43

facts to establish minority shareholder oppression and to overcome the business judgment presumption that applies to all directors' actions. That is, he has pleaded sufficient facts to demonstrate: (1) the directors' historical practice was to pay Eastland's profits to its stockholder/employees as bonus compensation instead of dividend payments; (2) that the directors' decision to continue to pay corporate profits to its existing stockholder/employees to the exclusion of Edward—who is a stockholder but no longer an employee—is not action undertaken in good faith under the circumstances; (3) the allegations, if true, would establish that the directors are paying Eastland's profits in a manner that does not treat all stockholders equally and in furtherance of their personal interest or benefit; and (4) these acts are not being undertaken with the care that an ordinarily prudent person in a like position would use under similar circumstances, which is causing direct harm to Edward. I would determine therefore, that Edward has sufficiently pleaded facts that would constitute "oppressive conduct" that, if proven, would entitle a court to award equitable relief under CA § 3-413 short of involuntary dissolution. In other words, the above-described conduct interferes with Edward's reasonable expectation that, as a stockholder, he will continue to receive a share of Eastland's profits regardless of his employment or management status with Eastland.

I make an observation about the Amended Complaint. As I explained above, the MGCL applies to small and large corporations. Corporate management decisions are vested by statute in the *directors* of the corporation, giving the directors statutory rights and duties, and protections where they act in accordance with the business judgment rule. CA § 3-413(b)(2) allows a stockholder to seek equitable relief where "[t]he acts of the

44

directors or those in control of the corporation are illegal, oppressive or fraudulent." Although the Majority makes a passing reference to the fact that Edward has pleaded sufficient facts to overcome the business judgment presumption, *see* Maj. Slip Op. at 27 n.17, in my view, whether a stockholder has overcome the business judgment rule should be the focus of the analysis when a stockholder is alleging that directors' acts constitute oppressive conduct. Edward should not be permitted to avoid the business judgment presumption at the pleading stage because he has alleged that Vipa and Oscar were acting as *both* directors and majority stockholders, and that if they were performing acts in their role as majority stockholders, they are acting as "others in control" and therefore escape the protections of the business judgment rule. The plain language of CA § 3-413(b)(2), which discusses conduct by directors or "others in control," in my view, simply means that the statutory framework of the MGCL recognizes that in some instances, corporate acts may be legally undertaken by someone other than by the board of directors, and that in those instances, the conduct of "others in control" may form the basis for a claim of oppressive conduct. *See, e.g.*, CA § 2-401(b) (stating that "[a]ll powers of the corporation may be exercised by or under the authority of the board of directors *except as conferred on or reserved to the stockholders by law or by charter or bylaws of the corporation*[]") (emphasis added). The "others in control" language simply recognizes that there are instances in which others may legally have control to undertake the actions that the stockholder contends are oppressive.

When a complaint involves the application of the business judgment rule that applies to corporate acts undertaken by its directors, the plaintiff must plead sufficient facts

45

to overcome the presumption of the rule in the complaint. *See, e.g., Oliveira*, 451 Md. at 246 (stating that the petitioners' "claims were properly dismissed by the Circuit Court for failure to overcome the business judgment rule presumption").

At the pleading stage, where a minority stockholder is alleging oppressive conduct by the directors for management decisions that are placed within their sole purview under the MGCL, the stockholder should plead sufficient facts to overcome the business judgment rule. For example, Tisnai is a director and is not a stockholder. He is being sued under Count I for acts undertaken in his capacity as a director along with the other directors who happen to be stockholders. He is entitled to the business judgment rule presumption at the pleadings stage. Edward is required to plead sufficient facts to overcome the business judgment presumption for claims against the member of the board of directors to overcome dismissal. Stated another way, directors such as Tisnai should not lose the protection of the business judgment rule presumption at the pleading stage because the pleading alleges that the other directors, who happen to be stockholders, were acting in their capacity as stockholders. Here, I agree with the Majority that Edward has pleaded sufficient facts to overcome the business judgment rule as to the acts of the directors.

Of course, there may be instances where majority stockholders are undertaking acts in which they are legally authorized to take under the MGCL—such as, for example, removing a director—which forms the basis for the minority stockholder's allegation of oppressive conduct. There may also be instances where a minority stockholder contends that the majority stockholders are undertaking fraudulent, illegal or *ultra vires* acts—acts that they have no legal authority to undertake—which may also form the basis for

46

entitlement to equitable remedies under CA § 3-413(b)(2).[11]  In other words, the pleading should set forth sufficient facts to identify the conduct in question, and if it is being undertaken by a director, sufficient facts to overcome the business judgment rule.  If a minority stockholder is alleging that the actions are being undertaken by majority stockholders in a fraudulent, illegal, or *ultra vires* manner, the complaint should say that.  We cannot excuse the statutory presumption of the business judgment rule at the pleading stage by permitting minority stockholders to make generalized allegations that directors/majority stockholders are acting outside of their capacity as directors—and therefore their actions are not entitled to the business judgment presumption—simply because they are also majority stockholders.  Given that this is a legislatively established standard of conduct that applies to directors' management decisions, this Court, or any other court, should take care not to add language to the standard that alters or expands its plain language.  *See Boland v. Boland*, 194 Md. App. 477, 502 (2010), *rev'd on other grounds*, 423 Md. 296 (2011) ("Maryland's business judgment rule, being statutory, is the product of legislation and, absent ambiguity or other constitutional infirmity, is not subject to interpretation or revision by judicial gloss.").

---

[11] For example, there may be instances where the minority stockholder contends that majority stockholders were taking certain *ultra vires* acts for which they have no legal authority to take and which were causing a direct injury.  For example, if Vipa and Oscar were making decisions concerning the distribution of profits in their capacity as stockholders—to the exclusion of other directors, such as Tisnai—which they had no legal authority to take, the stockholder might have a claim under CA § 3-413(b)(2) against those individuals on the basis that such acts were *ultra vires*, illegal, or fraudulent.  If that conduct is being alleged, it should be pleaded in the complaint.

Finally, in considering Edward's claims for equitable remedies, a court should be guided by our discussion in *Bontempo*. As we explained in *Bontempo*, the court should first determine whether the rights of minority stockholders have been oppressed. 444 Md. at 348. In giving consideration to a stockholder's expectations as part of that analysis, the court should consider whether the stockholder's expectations were objectively reasonable. *Id.* at 398. While it is certainly reasonable for a stockholder to have a continued expectation that he or she will receive corporate profits to which he or she is entitled in the same manner as other stockholders without regard to employment status, it may not be reasonable for the stockholder to have an expectation of continued employment or management status given the at-will nature of employment under Maryland law in the absence of a contract, and the statutory authority of stockholders to remove a director with or without cause.

If the court determines that the Defendants engaged in oppressive conduct that interfered with, or continues to interfere with the stockholder's reasonable expectations, the court may fashion an equitable remedy. However, the court is "not required to match its remedy to an expectation of the minority [stockholder]." *Id.* at 369. Or stated another way, "'[a] reasonable expectation' for purposes of the corporate dissolution statute is simply a way of detecting oppression, but it does not dictate the relief that an equity court is to grant." *Id.* at 371. "In particular, a court should take into account not only the reasonable expectations of the oppressed minority shareholder, but also the expectations and interests of others associated with the company." *Id.* at 370. Indeed, "[t]he existence and operation of the corporation—an entity that is legally distinct from any of its owners—affects not only the complaining and controlling shareholders, but also many others who

48

may be associated with or depend on the company—other shareholders, its management, employees, and customers." *Id.*

## IV

In conclusion, I agree with the Majority's analysis of Count III. Although I concur with the Majority's ultimate disposition of the statutory claim pleaded under Count II, I conclude that Edward has sufficiently pleaded facts to establish a direct claim against the directors for a violation of the statutory standard of conduct set forth in CA § 2-405.1(c), and that he has set forth sufficient facts to allege that he has suffered a distinct injury separate and apart from any harm suffered by Eastland. In my view, Edward has pleaded sufficient facts to overcome the statutory presumption that Eastland's directors acted: (1) in good faith; (2) in a manner the director reasonably believes to be in the best interest of the corporation, or in this case, in a manner that benefits all stockholders equally; and (3) with the care that an ordinarily prudent person in a like position would use under the circumstances. Edward has alleged sufficient facts to establish that the violation has caused him a distinct injury—the deprivation of Eastland's profits that are being paid to other stockholders. Nonetheless, the only relief sought in Count II was compensatory damages, which are not available for breaches of the duties identified in that claim under the facts alleged. For that reason, I agree that Count II was properly dismissed, and would reverse the judgment of the Appellate Court. Given that this case is the Court's first opportunity to consider a stockholder's direct claim for a violation of the directors' statutory standard of conduct, and my discussion of the types of equitable remedies that are available for such

a claim, on remand, if Edward seeks leave to amend his prayers for relief on Count II, the court may consider such a request in its discretion.

With respect to Count I, for the same reasons that I would conclude that Edward has stated a claim for a violation of the directors' standard of conduct under CA § 2-405.1, I would similarly conclude that Edward has sufficiently pleaded facts that would constitute "oppressive conduct" under CA § 3-413(b)(2). If Edward is able to prevail at trial under either or both of these statutory claims, a court would be permitted to fashion equitable relief in the same manner that this Court and the Appellate Court have upheld in *Bontempo* and *Edenbaum*.[12]

Chief Justice Fader has authorized me to state that he joins this opinion.

---

[12] I wish to acknowledge the very helpful amicus submission provided in this case by the Maryland Chamber of Commerce.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/37a22cn.pdf